CHAPIN v A & L PARTS, INC

Docket No. 257917. Submitted January 11, 2007, at Detroit. Decided January 30, 2007, at 9:10 a.m. Reconsideration denied, 480 Mich___.

Phillip R. and Bernie M. Chapin brought a negligence action in the Wayne Circuit Court against A & L Parts, Inc., DaimlerChrysler Corporation, Ford Motor Company, General Motors Corporation, Honeywell, Inc., and others. The plaintiffs alleged liability for plaintiff Phillip Chapin's mesothelioma, which they claimed was caused by his exposure to chrysotile asbestos in automotive brake linings that he ground as a brake mechanic for 45 years. The defendants moved to exclude the testimony of plaintiffs' proposed expert, claiming that such testimony is inadmissible under MRE 702 and MCL 600.2955(1) because the expert cannot offer an opinion that exposure to dust from asbestos-containing automotive brake linings causes mesothelioma without any epidemiological study establishing the link between pathogen and disease. The trial court, Robert J. Colombo, Jr., J., denied the motion. On application for leave to appeal filed by DaimlerChrysler, Ford, General Motors, and Honeywell (hereafter referred to as the defendants), the Court of Appeals, WILDER, P.J., and KELLY and MURRAY, JJ., vacated the trial court's order in an unpublished order issued May 19, 2004 (Docket No. 255415), and remanded the case for an evidentiary hearing. Following the hearing, the trial court again ruled that the plaintiffs' expert's testimony was admissible. Shortly after trial began, the trial court dismissed the action with prejudice upon stipulation by the parties, but preserved the defendants' right to challenge the evidentiary ruling on appeal.

The Court of Appeals held:

1. The trial court did not abuse discretion in ruling that the challenged expert testimony was admissible. The testimony was admissible as a matter of law under MRE 702 and MCL 600.2955(1). MRE 702 provides in part that a trial court may allow expert testimony in the form of an opinion if the court determines that scientific knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue and the testimony is based on sufficient facts or data, the testimony is the product of

reliable principles and methods, and the witness has applied the principles and methods reliably to the facts of the case. MCL 600.2955(1) provides in part that scientific opinion rendered by a qualified expert is not admissible in an action for death or personal injury unless the court determines that the opinion is reliable and will assist the trier of fact. In making that determination, the statute requires the court to consider (a) whether the opinion and its basis have been subjected to scientific testing and replication, (b) whether the opinion and its basis have been subjected to peer-review publication, (c) the existence and maintenance of generally accepted standards and whether the opinion and its basis are consistent with those standards, (d) the known or potential error rate of the opinion and its basis, (e) the degree to which the opinion and its basis are generally accepted within the relevant expert community, (f) whether the basis for the opinion is reliable and whether experts in that field would rely on the same basis to reach the type of opinion being proffered, and (g) whether the opinion or methodology is relied on by experts outside the context of litigation. The only serious point of contention in this case was over how one could draw causal connections. The defendants, through their expert, asserted that association between a pathogen and a disease can only be established through controlled epidemiological studies. In contract, the plaintiffs' expert contended that epidemiological studies were only one consideration among many and that the causal link between asbestos in automotive brake linings and mesothelioma can be established under the methodology pioneered by Sir Bradford Hill. Factors considered under that methodology are strength of association, temporality, biologic gradient, consistency, specificity, biological plausibility, coherence, experimental evidence, and analogy.

2. An evidentiary hearing under MRE 702 and MCL 600.2955 is merely a threshold inquiry to ensure that the trier of fact is not called on to rely in whole or in part on an expert opinion that is only masquerading as science. The courts are not in the business of resolving scientific disputes. The only proper role of a trial court at hearings conducted pursuant to *Daubert v Merrell Dow Pharmaceuticals, Inc*, 509 US 579 (1993), is to filter out expert evidence that is unreliable, not to admit only unassailable evidence. The inquiry is not into whether an expert's opinion is necessarily correct or universally accepted, but into whether the opinion is, as it was in this case, rationally derived from a sound foundation.

Affirmed.

METER, P.J., concurring, wrote separately to express his approval of and reliance on the sound analysis presented by the trial

court. The trial court considered and weighed the relevant factors of MCL 600.2955(1) and arrived at a reasonable conclusion that accords with the information presented to it. The plaintiffs' expert noted that asbestos was such a "clearly established risk factor" for mesothelioma, and that mesothelioma was so rare, that formal epidemiological studies were unnecessary to link mesothelioma to the type of asbestos exposure at issue in this case. The expert's qualifications to offer an expert opinion were extensive, and his conclusion was based on sound reasoning and scientific literature. His conclusion accorded with government publications on risks posed to automotive brake workers.

O'CONNELL, J., dissenting, stated that the sole issue in this case is whether the testimony of the plaintiffs' expert is admissible under *Daubert*. According to *Daubert*, expert testimony only qualifies as admissible scientific knowledge if empirical testing supports the theory or technique on which the expert relies. Both the plaintiffs' expert and the defendants' expert testified that 15 epidemiological studies have been conducted to determine if there is an empirically verifiable correlation between brake grinding and mesothelioma and that none of them established a causal connection. The plaintiffs' expert's testimony is inadmissible given the lack of scientific evidence suggesting a correlation between brake grinding and mesothelioma. The trial court's evidentiary ruling should be reversed.

*Zamler, Mellen & Shiffman, P.C.* (by *Margaret H. Jensen* and *Alice A. Buffington*), and *Charfoos & Christensen, P.C.* (by *David R. Parker*), for Phillip R. and Bernie M. Chapin.

*Clark Hill PLC* (by *John E. Berg, Elizabeth Jollife,* and *Paul C. Smith*) for DaimlerChrysler Corporation.

*Dykema Gossett PLLC* (by *Ted T. Amsen, Kathleen McCree Lewis,* and *Laura Sagolla*) for Ford Motor Company and General Motors Corporation.

*Harvey Kruse, P.C.* (by *Dale R. Burmeister* and *Stephanie I. Marino*), for Honeywell, Inc.

Amici Curiae:

*Crowell Moring* (by *Michael Goecke*) for Coalition for Litigation Justice, Inc., and others.

Before: METER, P.J., and O'CONNELL and DAVIS, JJ.

DAVIS, J. Defendants DaimlerChrysler Corporation, Ford Motor Company, General Motors Corporation, and Honeywell, Inc., appeal by leave granted a stipulated order dismissing this case with prejudice.[1] This appeal arises from the trial court's decision to admit plaintiffs Phillip R. and Bernie M. Chapin's expert's testimony. Defendants filed a motion in limine to exclude that testimony, and the trial court denied that motion. This Court, WILDER, P.J., and KELLY and MURRAY, JJ., vacated the order denying the motion and remanded for an evidentiary hearing. Unpublished order of the Court of Appeals, entered May 19, 2004 (Docket No. 255415). The trial court again ruled that plaintiffs' expert's testimony was admissible. The matter then went to trial, but after little more than opening argument, the parties entered into a consent judgment that was made subject to defendants' right to challenge the evidentiary ruling on appeal.

This case arises out of plaintiff Phillip R. Chapin's diagnosis with mesothelioma at the age of 60, after having spent 45 years working as an automobile brake mechanic. Part of his job involved grinding brake linings that contained chrysotile asbestos. At issue is whether plaintiffs' expert presented scientifically reliable, and therefore legally admissible, evidence drawing a causal connection between mesothelioma and inhalation of brake-lining dust. We affirm the trial court's ruling in limine.

---

[1] Although numerous other defendants were named below, it appears that plaintiffs' claims against them have all been settled or dismissed.

This Court reviews for an abuse of discretion a trial court's determination of the qualifications of a proposed expert witness. *Woodard v Custer*, 476 Mich 545, 557; 719 NW2d 842 (2006). This Court likewise reviews for an abuse of discretion a trial court's decision whether to admit evidence, although admission of legally inadmissible evidence is necessarily an abuse of discretion. *Craig v Oakwood Hosp*, 471 Mich 67, 76; 684 NW2d 296 (2004). The interpretation of an evidentiary rule is reviewed de novo "in the same manner as the examination of the meaning of a court rule or a statute." *Waknin v Chamberlain*, 467 Mich 329, 332; 653 NW2d 176 (2002). Rules of evidence are construed in the same way as statutes. *Craig, supra* at 78.

Before a trial court may admit any expert testimony, the trial court is required by MRE 702 "to ensure that each aspect of an expert witness's proffered testimony —including the data underlying the expert's theories and the methodology by which the expert draws conclusions from that date—is reliable." *Gilbert v Daimler-Chrysler Corp*, 470 Mich 749, 779-783; 685 NW2d 391 (2004). "While the exercise of this gatekeeper role is within a court's discretion, a trial judge may neither 'abandon' this obligation nor 'perform the function inadequately.' " *Id.* at 780, quoting *Kumho Tire Co Ltd v Carmichael*, 526 US 137, 158-159; 119 S Ct 1167; 143 L Ed 2d 238 (1999) (Scalia, J., concurring). "The plain language of [MCL 600.2955(1)] establishes the Legislature's intent to assign the *trial court* the role of determining, pursuant to the *Daubert*[ *v Merrell Dow Pharmaceuticals, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993)] criteria, whether proposed scientific opinion is sufficiently reliable for jury consideration." *Greathouse v Rhodes*, 242 Mich App 221, 238; 618 NW2d 106 (2000), rev'd on other grounds 465 Mich 885 (2001) (emphasis in original). The United States Su-

preme Court emphasized that the inquiry is flexible and focused "solely on principles and methodology" rather than ultimate conclusions, and its "overarching subject is the scientific validity—and thus the evidentiary relevance and reliability—of the principles that underlie a proposed submission." *Daubert, supra* at 594-595.

The specific question presented to us in this appeal is whether the expert opinion testimony given by plaintiffs' expert, Dr. Richard Allen Lemen, was admissible as a matter of law under MRE 702 and MCL 600.2955(1), which govern the inquiry into whether expert evidence is scientifically reliable.[2] I would hold today that the trial court's role as gatekeeper does not require it to search for absolute truth, to admit only uncontested evidence, or to resolve genuine scientific disputes. The facts that an opinion held by a properly qualified expert is not shared by all others in the field or that there exists some conflicting evidence supporting and opposing the opinion do not necessarily render the opinion "unreliable." A trial court does not abuse its discretion by nevertheless admitting the expert opinion, as long as the opinion is rationally derived from a sound foundation.

MRE 702 provides:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to

---

[2] I do not believe, unlike the dissent, that the admissibility of Dr. Lemen's testimony is in any way affected by plaintiffs' possible reasons for having initially joined the now-dismissed defendants in the action below. Presuming, as the dissent asserts, that plaintiff Phillip Chapin was more likely to have contracted mesothelioma from elsewhere, Dr. Lemen explicitly testified that he had no knowledge of plaintiff or his particular circumstances. The admissibility of his testimony turns solely on whether it, taken by itself, satisfies the pertinent criteria—not whether plaintiff's case itself, when facts extraneous to Dr. Lemen's testimony are considered, might or might not be a strong one when presented to the jury.

understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

And MCL 600.2955(1) provides:

In an action for the death of a person or for injury to a person or property, a scientific opinion rendered by an otherwise qualified expert is not admissible unless the court determines that the opinion is reliable and will assist the trier of fact. In making that determination, the court shall examine the opinion and the basis for the opinion, which basis includes the facts, technique, methodology, and reasoning relied on by the expert, and shall consider all of the following factors:

(a) Whether the opinion and its basis have been subjected to scientific testing and replication.

(b) Whether the opinion and its basis have been subjected to peer review publication.

(c) The existence and maintenance of generally accepted standards governing the application and interpretation of a methodology or technique and whether the opinion and its basis are consistent with those standards.

(d) The known or potential error rate of the opinion and its basis.

(e) The degree to which the opinion and its basis are generally accepted within the relevant expert community. As used in this subdivision, "relevant expert community" means individuals who are knowledgeable in the field of study and are gainfully employed applying that knowledge on the free market.

(f) Whether the basis for the opinion is reliable and whether experts in that field would rely on the same basis to reach the type of opinion being proffered.

(g) Whether the opinion or methodology is relied upon
by experts outside of the context of litigation.

Defendants do not contend that Dr. Lemen's opinion
would not "assist the trier of fact" under either the
court rule or the statute, a determination that the
United States Supreme Court has explained "goes pri-
marily to relevance." *Daubert, supra* at 591. Further-
more, whether "the witness has applied the principles
and methods reliably to the facts of the case," does not
seem applicable to this case. Dr. Lemen explained that
he had no knowledge of the specific plaintiff in this
matter, and the issue seems to be only whether *in the
abstract* exposure to automobile brake dust is or can be
a causal factor of mesothelioma.

When he gave his testimony, Dr. Lemen was a private
consultant in the fields of public health, occupational
health, and epidemiology; he had retired from the
United States Public Health Service, where he held the
rank of Assistant Surgeon General of the United States
and was also the Deputy Director of the National
Institute for Occupational Safety and Health (NIOSH).
He had authored approximately two dozen peer-
reviewed publications relating to asbestos disease and
epidemiology, and he "had been involved in every rec-
ommendation for asbestos that NIOSH or [sic] had
made to OSHA [Occupational Safety and Health Ad-
ministration]" between NIOSH's first asbestos docu-
ment in 1972 and Dr. Lemen's retirement in 1996. Dr.
Lemen's other credentials and experience included a
professorship, an adjunct professorship, a Ph.D. in
epidemiology, graduate work in toxicology and occupa-
tional medicine, providing testimony to the United
States Congress regarding asbestos and occupational
disease, numerous peer-reviewed journal publications

and scientific lectures around the world, and work with some of the most-respected scientists in his field.

Defendants' expert, Dr. Michael Goodman, was an assistant professor at the Department of Epidemiology at Emory School of Public Health, and he was a consultant to and former employee of a company called Exponent, "a consulting research organization." His testimony was provided in that role as an Exponent employee. He had been a pediatrician before 1994 but had obtained a master's degree in public health and took a number of courses in epidemiology and biostatistics. Dr. Goodman also coauthored two papers along with others from Exponent. Dr. Goodman explained that his "area of expertise" did not include either "case reports in general" or case reports dealing with asbestos disease, and he further stated that he was not interested in the history of science, nor was he a medical expert.

The experts agreed, either explicitly or implicitly, on a number of salient facts. Both testified that the science of epidemiology concerns the identification of the causes of diseases and ways to prevent them. Both experts agreed that the only known cause of mesothelioma was exposure to asbestos, although both also indicated that some cases of mesothelioma could not be traced to any known asbestos exposure. Both experts agreed that asbestos affects all individuals who are exposed to it in essentially the same way, and the important considerations were how much exposure one suffers and what kind of asbestos to which one is exposed. Both experts agreed that there are two general types of asbestos fibers: shorter serpentine/chrysotile fibers and longer amphibole fibers. Amphibole fibers are significantly more hazardous than chrysotile fibers,

but both kinds cause mesothelioma, and the more asbestos one inhales the greater the risk. These facts are not in dispute.

Dr. Lemen further testified that there was no known "safe" dose of asbestos, and the World Health Organization's International Program for Chemical Safety had particularly found in 1998 that there was no safe level for chrysotile asbestos, although Dr. Lemen opined that there probably was such a level. OSHA implemented a standard for exposure of 0.1 fibers per cubic centimeter (cc),[3] and Dr. Lemen testified that he was personally involved in setting that standard. However, Dr. Lemen explained that OSHA's exposure level was *not* recognized as safe, but it was chosen because 0.1 fibers per cc was the lowest level that could actually and feasibly be measured with the analytical methodology available. The experts agreed that a given individual's job is only relevant for determining how much exposure to asbestos that individual will suffer. It is undisputed that automobile brake mechanics are exposed to airborne chrysotile asbestos fibers from inhaling the dust produced by grinding brake linings,[4] although the *average*

---

[3] It was not explained whether this refers to cubic centimeters of air or of some other substance.

[4] The dissent asserts that "Dr. Lemen never refuted the testimony of defendants' expert, who provided evidence that the brake-grinding process essentially prevents harmful asbestos fibers from being discharged into the air that a brake grinder inhales." *Post* at 145-146 n 4. This is an incorrect reading of the testimony. It is in fact undisputed that the asbestos contained in brake linings degrades into a harmless substance called forsterite *during normal use of the brakes*, so brake dust produced during braking contains essentially no asbestos. However, the degradation requires temperatures in excess of 600 to 800 degrees Celsius, which are achieved during braking but *not* during maintenance grinding operations. Dr. Lemen explained that the lack of asbestos in brake dust produced by braking is only relevant to urban air pollution, not to asbestos levels in a machine shop, and Dr. Goodman did not dispute this point.

dosage is below OSHA's standard. Defendants provided no expert evidence tending to suggest that modern science is aware of a safe exposure level to chrysotile asbestos. Defendants pointed out, and Dr. Lemen agreed, that chrysotile fibers do not accumulate in the lungs, but Dr. Lemen explained that many of them migrate elsewhere in the body and that mesothelioma was a disease of the lining of the lungs, not technically a disease of the lungs themselves, so studies measuring the body burden only in the lungs do "not tell the whole story."

The experts' only serious point of contention was over how one could draw causal connections. Dr. Goodman asserted that association between a pathogen and a disease can only be established through controlled epidemiological studies,[5] never through case reports, and case reports are not informative in the presence of epidemiological evidence. Dr. Goodman further stated that case reports were "a very old form of conveying information," but he considered them irrelevant because they "don't lend themselves to statistical analysis." In contrast, Dr. Lemen explained that epidemiology relied on a number of tools, including case reports, epidemiological cohort studies, biological plausibility of materials, animal studies, and toxicological studies. He further explained that establishing cause and effect required looking at many issues, so one "can't rely

---

[5] The two most significant kinds are "cohort studies" and "case control studies." Cohort studies are expensive and involve following groups, or "cohorts," of individuals both with and without certain characteristics over a number of years to see whether they display any differences pertinent to a given hypothesis. Case control studies are in a sense the opposite: they start with a group that already has a given condition, and they then analyze that group alongside an otherwise-similar group without that condition to look for differences pertinent to a given hypothesis. Another kind is a "proportion mortality ratio" study, which can be used to compare groups to the general population.

simply upon say epidemiology." Dr. Lemen asserted that once a substance is known to be toxic, it would be inappropriate to conduct epidemiological studies specifically looking for deaths in a given profession, which is why the safety standards are based on exposure and not job title. Dr. Lemen opined that epidemiological studies in the 1930s had established beyond any reasonable doubt that asbestos causes asbestosis and that studies in the 1960s had established beyond any reasonable doubt that asbestos causes mesothelioma. He stated that studies have continued to confirm that asbestos causes mesothelioma.

Dr. Lemen explained that recommendations and publications issued by governmental organizations such as the Environmental Protection Agency (EPA), NIOSH, OSHA, and so on were not themselves epidemiological studies, but rather were based on all available scientific literature, including toxicological, environmental, epidemiological, and exposure studies, compiled together and analyzed in the aggregate. He stated that case studies and epidemiological studies are different, but the most important thing was a study's methodology, which generally refers to how the study is conducted. Dr. Lemen stated that the most-adopted methodology for determining causation was published in 1965 by Sir Bradford Hill, a British statistician who was knighted for his work in public health. The Sir Bradford Hill methodology "goes much beyond just using epidemiological data" and is primarily intended to determine cause and effect for the purpose of making decisions that will ideally prevent unnecessary deaths.

The Sir Bradford Hill methodology, as explained by Dr. Lemen, contains nine criteria, all of which should be considered when determining causation. "Strength of association" means a sufficiently strong association

between a substance and an effect can permit conclusions without statistical epidemiological data. For example, no epidemiological studies were needed to show that cyanide gas kills film-recovery plant workers when they are exposed to it. Dr. Lemen explained that epidemiological evidence "is clearly the best that we've got" and "it leaves little doubt" when it exists, but it was not needed to draw conclusions on which to base preventive actions. "Temporality" means that cause must precede effect or there can be no association. "Biologic gradient," or "response gradient," refers to basic toxicological knowledge that more exposure increases the risk of disease, as asbestos does. "Consistency" means a given effect must "be observed repeatedly in multiple studies," preferably different kinds of studies, and "specificity" means an agent always causes the same kind or kinds of disease. It is undisputed that asbestos consistently causes the same few diseases. "Biological plausibility" looks at whether a theory of causation comports with other known facts, such as whether an agent can actually affect a certain body part, and asbestos fits this criterion. "Coherence" is similar to biological plausibility in that it checks for inconsistency with other theories of causation. Dr. Lemen noted that the animal studies and the biological studies on asbestos fit together. "Experimental evidence" could include animal and laboratory studies in the case of asbestos, and the experimental evidence also connected asbestos to the same diseases. It would, of course, be unethical to perform clinical experiments on people by deliberately exposing them to asbestos to confirm its toxicity, no matter how probative such an experiment might be.

The final factor in the Sir Bradford Hill methodology is "analogy." Dr. Lemen explained that, as applied to the circumstances of this case, "analogy" looks at whether automobile brake workers are actually exposed to

enough of the agent under discussion to cause disease. Dr. Lemen again stated that there was no known safe exposure level to asbestos below which it would not cause mesothelioma, and studies exist showing that automobile brake workers are exposed to asbestos, thereby indicating a cause and effect relationship. On the basis of all of the foregoing factors, combined with the known asbestos exposure and "thousands of epidemiological studies and animal studies and toxicological studies," Dr. Lemen concluded that there was ample scientific evidence to link mesothelioma to occupational exposure to asbestos-containing brake products. Dr. Lemen further pointed out that none of the factors was dispositive by itself, but the best way to determine causation was to consider them all and to further consider reports issued by governments and health agencies or organizations.

The experts agreed that a number of epidemiological studies had analyzed mesothelioma among automobile brake mechanics and failed to show an association between asbestos-based automobile brake products and mesothelioma. The significance of these epidemiological studies is the primary point of departure between the experts. Dr. Goodman concluded that, in effect, these studies conclusively show that Dr. Lemen's opinion is "junk science," no matter how plausible the opinion might be. Indeed, Dr. Goodman opined that the results of the studies are "surprising" because brakes are known to contain asbestos and brake workers are known to be exposed to brake dust while working on brakes.[6] He stated that there "must be an explanation,"

---

[6] The dissent states that "the record lacks any scientific evidence suggesting that there is a correlation between brake grinding and mesothelioma." *Post* at 146. Dr. Goodman's testimony was that brake grinding does not cause mesothelioma. However, if that finding is "surprising," then even Dr. Goodman must have perceived some reliable

but he thought it was highly unlikely that the explanation was that the studies were flawed. Dr. Goodman stated that he did not consider case reports in drawing his conclusions because he did not consider them informative when epidemiological evidence was available, and he opined that case reports could not establish association.

Dr. Lemen, however, regarded the epidemiological studies as only one consideration among many.[7] He further asserted that the epidemiological studies suffered from a variety of self-acknowledged limitations, and in any event they did not constitute evidence that asbestos brake products would *not* cause mesothelioma. He explained that some of the studies had been too small or they had been too diluted in their sampling, and a study purporting to negate a well-founded causal link would need to feature sufficient latency, exposure, and sample size to ensure that the results do not stem from mere chance.[8] Dr. Lemen noted that all the other

scientific support, at least until the disputed epidemiological studies were performed, that would suggest such a causal connection.

[7] Despite the fact that this was the primary dispute between the experts, the dissent concludes that Dr. Goodman's position is legally correct, citing *Daubert, supra* at 593. That portion of *Daubert* only states that the distinguishing characteristic of science is that its hypotheses are subjected to empirical testing. "Empirical" merely means that knowledge is derived from observed tests rather than pure conjecture. Our reading of the record is that both experts presented testimony regarding scientific knowledge that had, in fact, been subjected to testing; they disputed how *well* it had been tested and how *relevant* the results were. I see nothing in *Daubert* to suggest that testing a hypothesis necessarily requires any particular *kind* of test.

[8] Although not explored in depth at the evidentiary hearing, the experts referred to "statistical significance," which our own research reveals to be a measure of how likely it is that a given observation occurred by accident. It is not a measure of how "practically significant" or perhaps how impressive, in the lay sense, a result is. Relating to this, the dissent appears to conclude that, because the studies attempted to

factors outlined in the Sir Bradford Hill methodology mandated the conclusion that asbestos-containing brake products caused mesothelioma, and the epidemiological studies did not provide any reason to change that conclusion. Dr. Lemen also stated that a mesothelioma registry in Australia had found automobile brake workers to have ten times more mesothelioma than the general population, although the experts agreed that the registry was not subject to statistical analysis.[9] Dr. Lemen concluded that "as I sit here today, no government entity that I'm aware of has changed their [sic] recommendations or their regulations to eliminate brake workers, which is the standard that I would go by to say it's not been accepted in the scientific, regulatory, and medical community."

Although defendants raise individual arguments under each factor enumerated in MCL 600.2955(1), all but two are premised on the epidemiological studies. The trial court correctly recognized that Dr. Lemen's opinion had no error rate, but the key point of defendants' argument is that Dr. Lemen's opinion is wrong, not that it has an "error rate." Furthermore, although MCL 600.2955(1) explicitly requires the trial court to *consider* all seven of the factors it enumerates, the statute does not require that each and every one of those seven factors must favor the proffered testimony. Defendants also contend that Dr. Lemen's opinion is significantly

draw connections between automobile brake work and mesothelioma, they were specifically intended as studies *of* automobile brake workers. In fact, at least some of those who conducted the studies, by their own admissions as Dr. Lemen noted, focused on individuals who worked more broadly as automobile mechanics or suffered from other sampling problems. The dissent also concludes that the experts agreed that the studies were properly conducted, despite Dr. Lemen's testimony that most of them were too limited in one way or another to be useful.

[9] The dissent concludes that this registry does not even rise to the level of "any scientific evidence."

broader than the opinion expressed in his peer-reviewed article, thus making the opinion "not subjected to peer review publication." The article states that the studies are "equivocal" and "by no means exonerate" a causal relationship between brake work and mesothelioma, which, taken out of context, indeed fails to constitute affirmative support for such a causal connection. However, that conclusion was stated in the context of other evidence tending to support a causal link between mesothelioma and grinding asbestos-containing brake linings.

A dispute between the experts over the significance or meaning of a publication is not the same as an absolute failure to publish. And again, defendants contend that there are no published *epidemiological* studies supporting Dr. Lemen's opinion. Finally, the bases for Dr. Lemen's opinion—specifically, that chrysotile asbestos causes mesothelioma and that automobile brake workers are exposed to chrysotile asbestos released during brake work—were subjected to peer-review testing and are facts that defendants do not contest. Otherwise, defendants' criticism of five of the seven factors is based solely on the epidemiological studies that fail to support Dr. Lemen's conclusion. In effect, defendants contend that, no matter how reasonable Dr. Lemen's opinion is, it has simply been proven wrong, and as such it no longer constitutes "recognized scientific knowledge."

When reduced to their essential points, Dr. Goodman's opinion is that the only way to establish causation is by performing analyses that have control groups, whereas Dr. Lemen's opinion is that it is proper to look at all sources of data. Dr. Goodman explained that case reports, although useful for forming hypotheses, can easily produce wrong results because of coincidence. Dr.

Lemen explained that a sufficiently strong and consistent result from case reports and other consistent data can lead one to reliable conclusions.

The fact that two scientists value the available research differently and ascribe different significance to that research does not necessarily make either of their conclusions unreliable. Indeed, science is, at its heart, itself an ongoing search for truth, with new discoveries occurring daily, and with regular disagreements between even the most respected members of any given field. A *Daubert*-type hearing of this kind is *not* a judicial search for truth. The courts are unlikely to be capable of achieving a degree of scientific knowledge that scientists cannot. An evidentiary hearing under MRE 702 and MCL 600.2955 is merely a *threshold* inquiry to ensure that the trier of fact is not called on to rely in whole or in part on an expert opinion that is only masquerading as science. The courts are not in the business of resolving scientific disputes. The only proper role of a trial court at a *Daubert* hearing is to filter out expert evidence that is unreliable, not to admit only evidence that is unassailable. The inquiry is not into whether an expert's opinion is necessarily correct or universally accepted. The inquiry is into whether the opinion is rationally derived from a sound foundation. See *Nelson v American Sterilizer Co (On Remand)*, 223 Mich App 485, 491-492; 566 NW2d 671 (1997).

Dr. Lemen conceded that epidemiological studies are the "best" evidence for causation. However, Dr. Lemen also pointed out that the "epidemiology textbooks" are *divided* on the issue whether case control studies are "the best" or merely useful tools. The experts disagreed over the need for studies that can be subjected to statistical analysis where other strong evidence is avail-

able. Given the numerous points of agreement, it appears that all the evidence other than the epidemiological studies *supports* Dr. Lemen's opinion. This case does *not* present a situation involving questionable or absent epidemiological evidence coupled with questionable or absent *other* evidence, see *Craig, supra* at 83-85; *Nelson, supra* at 495-498, or coupled with an "expert" who actually lacks the requisite qualifications. See *Gilbert, supra* at 783-791. Rather, this is a case involving strong and undisputed support for Dr. Lemen's position, coupled with fairly consistent yet potentially questionable contradictory evidence, depending on which expert is to be believed. Although clearly not universally accepted, and although unsupported by epidemiological studies that may or may not be flawed, Dr. Lemen's opinion is certainly objective, rational, and based on sound and trustworthy scientific literature. The trial court was faced with a disagreement between two experts over the significance of epidemiological studies. This is precisely the situation in which the trial court is called on to exercise discretion, and where this Court should not thereafter interfere.

We further agree with the New Jersey courts' resolution of the same issue. Whether automobile brake dust causes mesothelioma is the central issue in this case. Both parties presented scientifically sound expert testimony tending to support their respective positions. Therefore, deciding this case at an evidentiary hearing, depriving the jury of the opportunity to fulfill its proper role as fact-finder, would be inappropriate. See *Becker v Baron Bros, Coliseum Auto Parts, Inc*, 138 NJ 145, 154-159; 649 A2d 613 (1994). The trial court properly found Dr. Lemen's opinion reliable and admitted it for the jury's consideration.

Affirmed.

METER, P.J. (*concurring*). I concur in Judge DAVIS's opinion, but write separately to express my approval of and reliance on the sound analysis presented by the trial court in this case. The trial court's opinion was lengthy and comprehensive and epitomized a proper exercise of discretion.

The court began its analysis by stating its history concerning asbestos-related cases:

> This [c]ourt has been the asbestos judge in Wayne County Circuit Court since January 1992. It has dealt with a significant number of cases involving [p]laintiffs exposed to asbestos while doing brake work. Until this case, no [d]efendant ever suggested that the science was not there to support a claim that auto mechanics grinding brake lines [sic] cannot get mesothelioma from asbestos in brakes. In fact, when this issue has been raised in other jurisdictions, it has been recognized to be a question of fact for the jury.

The court later discussed numerous reliable publications indicating that there was a risk of disease from low exposure to asbestos during brake work, and it emphasized the scientific background of Dr. Lemen. The court stated:

> The opinions given by Dr. Lemen have been the opinion of the government since the mid 1970s. Certainly the government including the National Institute for Occupational Safety and Health (NIOSH), the Occupational Safety and Health Administration, the Environmental Protection Agency, and the Public Health Department and the Surgeon General are made up of individuals or are individuals who are knowledgeable in the field of study and gainfully employed applying this knowledge. This was particularly true of Dr. Lemen when he held his position as the Deputy Director of NIOSH and . . . [was an] Assistant Surgeon General. Moreover, asbestos cases involving brake mechanics have been pursued for at least the last 20 years and have been on my docket for at least the last 11 plus years. The

opinions of the government from the 1970s have never been retracted or vacated and are still in effect today.

The court then stated that "[t]he [d]efendants tend to argue that epidemiological studies involving brake workers is [sic] the end all and the be all. . . . However, MCL 600.2955 does not talk in terms of epidemiological studies." The court also enumerated specific problems with the epidemiological studies relied on by defendants, and it noted that "the methodology and opinion of [Dr.] Lemen is relied on by experts outside of litigation." In the end, the court held that "the opinion of Dr. Lemen is reliable and will assist the trier of fact."

As noted by Judge DAVIS, we review for an abuse of discretion a trial court's decision to admit evidence. *Craig v Oakwood Hosp*, 471 Mich 67, 76; 684 NW2d 296 (2004). In my view, the opinion by the trial court here is a prime example of how a trial court *should* exercise its discretion in a case such as this. The court considered and weighed the relevant factors and arrived at a reasoned conclusion that accords with the information presented below.

While it is true that the available epidemiological studies introduced below failed to demonstrate that automotive brake work causes mesothelioma, the parties agreed that the only known cause of mesothelioma is asbestos exposure and that grinding brake linings produces asbestos. Moreover, Dr. Lemen explained that a consideration of the factors in the "Sir Bradford Hill methodology"[1] mandated the conclusion that asbestos-bearing brake products cause mesothelioma and that

---

[1] I do not conclude today that the "Sir Bradford Hill methodology" would automatically qualify, in every case, as a "reliable" methodology for purposes of admitting expert testimony. However, I believe that Dr. Lemen's use of the methodology was a *factor* here—along with the identified limitations of the epidemiological studies, the government

the epidemiological studies, especially with their limitations, did not provide any reason to change that conclusion. Dr. Lemen agreed that properly conducted epidemiological studies can determine what causes and what does not cause disease but that they could only evaluate causation in general, not causation in specific cases. He noted that asbestos was such a "clearly established risk factor" for mesothelioma, and mesothelioma was so rare, that formal epidemiological studies were unnecessary to link mesothelioma to the type of exposure at issue in the present case. Dr. Lemen's qualifications to offer an expert opinion in this case were extensive, and his conclusion was based on sound reasoning and scientific literature. His conclusion also accorded with government publications discussing risks posed to automotive brake workers.

The trial court recognized these pertinent factors and reached a sound conclusion in deciding to admit the testimony in question. The court carefully considered each of the factors set forth in MCL 600.2955(1) and made reasoned findings with respect to each factor.[2]

publications, and other factors—that could properly be considered by the trial court during its analysis of the proposed testimony.

[2] The dissenting judge suggests that I am relying exclusively on the trial court's recognition that in similar cases, no party had disputed the correlation between brake grinding and mesothelioma. The dissent also suggests that I am ignoring the import of *Daubert v Merrell Dow Pharmaceuticals, Inc,* 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993). The dissenting judge is mistaken. I mention the trial court's history of presiding over brake-grinding cases as a way of providing background information concerning the trial court's experience with asbestos cases. Nowhere in this opinion do I suggest that this history, alone, supports the trial court's ultimate decision in this case. Second, my opinion explicitly indicates that I am relying on the trial court's analysis of the factors in MCL 600.2955(1), and these factors are based on *Daubert.* See *Greathouse v Rhodes,* 242 Mich App 221, 238; 618 NW2d 106 (2000), rev'd on other grounds 465 Mich 885 (2001). I believe that the trial court properly analyzed these factors and arrived at a reasoned conclusion that did not

Even if it could be said that the conclusion is debatable, "[a] decision on a close evidentiary question ordinarily cannot be an abuse of discretion." *Lewis v LeGrow*, 258 Mich App 175, 200; 670 NW2d 675 (2003). Moreover, "[a] trial court error in admitting or excluding evidence will not merit reversal unless a substantial right of a party is affected . . . and it affirmatively appears that failure to grant relief is inconsistent with substantial justice." *Id.* Dr. Lemen's opinion is, on balance, sufficiently reliable to be admissible, and defendants are, of course, free to argue their contrary position in any trial. The failure to grant relief here is not "inconsistent with substantial justice." *Id.*

I concur.

O'CONNELL, J. *(dissenting).* The sole issue in this case is whether the testimony of plaintiff's[1] expert, Dr. Lemen, is admissible under the landmark case of *Daubert v Merrell Dow Pharmaceuticals, Inc,* 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993),[2] and its progeny, *Gilbert v DaimlerChrysler Corp,* 470 Mich 749; 685 NW2d 391 (2004), *General Electric Co v Joiner,* 522 US

---

amount to an abuse of discretion. The dissenting judge also states that "Dr. Lemen never refuted the testimony of defendants' expert, who provided evidence that the brake-grinding process essentially prevents harmful asbestos fibers from being discharged into the air that a brake grinder inhales." *Post* at 145-146 n 4. In response, I note that I agree with the analysis provided in footnote 4 of the lead opinion.

[1] Even though plaintiff Phillip R. Chapin is joined in this suit by his wife, Bernie Mae Chapin, for the sake of clarity, I refer to Phillip Chapin as the singular plaintiff throughout this opinion.

[2] Both the lead opinion and the concurring opinion initially acknowledge that the strictures set forth in *Daubert* should control this case, but eventually both opinions revert back to the primary elements found in the later-amended *Davis/Frye* test and fail to consider the implications of *Daubert.* See *People v Davis,* 343 Mich 348; 72 NW2d 269 (1955); *Frye v United States,* 54 App DC 46; 293 F 1013 (1923).

136; 118 S Ct 512; 139 L Ed 2d 508 (1997), and *Kumho Tire Co, Ltd v Carmichael,* 526 US 137; 119 S Ct 1167; 143 L Ed 2d 238 (1999).

According to *Daubert, supra* at 593, expert testimony only qualifies as admissible "scientific knowledge" if empirical testing supports the theory or technique on which the expert relies. Stated another way, plaintiff's expert testimony is only relevant and admissible under *Daubert* if plaintiff can establish, with the aid of empirical studies, that plaintiff's work as a brake mechanic caused him to contract mesothelioma.[3]

In the present case, both plaintiff's expert and defendants' expert testified that no less than 15 epidemiological studies have been conducted to determine if there is an empirically verifiable correlation between brake grinding and mesothelioma. Both experts testified that these studies were conducted properly in accordance with established scientific principles, and that none of these studies established a causal connection between brake grinding and mesothelioma.[4] Dr.

---

[3] Originally there were 26 other defendants in this lawsuit. Plaintiff admits that he developed mesothelioma as a result of being exposed to a variety of asbestos-containing products while working at a number of different jobs from 1956 to 2002. Plaintiff has settled with the 26 other defendants. The limited issue before this Court involves the existence of any scientific studies that establish a correlation between automobile brake mechanics and an increased risk of contracting mesothelioma. The record reflects that scientific studies have found a direct correlation between the exposure to asbestos common in plaintiff's other jobs and an increased risk of contracting mesothelioma. However, plaintiff fails to point to any scientific studies that demonstrate a correlation between mesothelioma and grinding brakes.

[4] This dearth of supporting empirical data is accentuated by two other glaring deficiencies in plaintiff's proofs. First, causation in asbestos cases necessarily relates to the inhalation of minute particles, so unlike many tort cases, there will never be eyewitness testimony of causation, and the plaintiffs are forced to establish the legal element of proximate cause through expert testimony. Yet Dr. Lemen never refuted the testimony of

Lemen further testified that epidemiological studies are the best evidence for causation, and Dr. Goodman testified that epidemiological studies are the only way to establish causation.[5] Under *Daubert*, plaintiff bears the initial responsibility of establishing that scientific studies support his expert's anticipated testimony. Simply put, other than Dr. Lemen's *ipse dixit* testimony opining that such a causal relationship existed, the record lacks any scientific evidence suggesting that there is a correlation between brake grinding and mesothelioma. Therefore, under *Daubert*, Dr. Lemen's testimony is inadmissible. See also *Kumho Tire Co*, *supra* at 151 (Breyer, J.), and 158-159 (Scalia, J., concurring).

I would reverse the decision of the trial court.

---

defendants' expert, who provided evidence that the brake-grinding process essentially prevents harmful asbestos fibers from being discharged into the air that a brake grinder inhales. Second, the irrefutable evidence indicates that plaintiff's later occupations exposed him to an atmosphere certainly containing the harmful asbestos fibers that, when inhaled in sufficient quantities, lead to the contraction of mesothelioma. Therefore, this is not a case in which two or more equally culpable and probable causes combine to injure a single plaintiff, but is instead an attempt to hold as many "pockets" liable as possible, no matter how attenuated their probable relationship to the injury may be.

[5] It bears repeating that this is not a case where there are no epidemiological studies available. Both experts testified that there are numerous epidemiological studies available, and that none of them substantiates plaintiff's claims. I respectfully disagree with the concurring opinion's exclusive reliance on the trial judge's expertise. The record demonstrates that the trial judge was not suggesting that empirical data had already established the necessary causation in other cases, but instead merely noted that other parties in other cases had taken the correlation between brake grinding and mesothelioma for granted. Any reliance on such a presumption in this case amounts to the application of a rogue mutation of res judicata and forecloses the courts' ability to adapt to scientific innovation and new discoveries. Accordingly, I respectfully conclude that bare reliance on a judge's experience, without further justification, contravenes the purposes of *Daubert* and spoils the entire analysis.