*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JEAN LIENARD,

       Plaintiff-Appellant,

UNPUBLISHED
April 27, 2023

v

APPLEWOOD NURSING CENTER, INC.,

       Defendant-Appellee.

No. 358562
Wayne Circuit Court
LC No. 19-006933-NH

Before: CAVANAGH, P.J., and MARKEY and BORRELLO, JJ.

PER CURIAM.

In this medical malpractice action, plaintiff appeals as of right the trial court's order granting summary disposition, pursuant to MCR 2.116(C)(10), in favor of defendant. On appeal, plaintiff argues that the trial court erred in granting summary disposition for defendant after it incorrectly struck the testimony of her medical expert establishing causation. For the reasons set forth in this opinion, we vacate and remand for further proceedings.

## I. BACKGROUND

This case arose from plaintiff's treatment at defendant's nursing facility following hip-replacement surgery. We begin by noting that the issue presented on appeal is narrow and is limited to deciding whether the trial court erred by determining that the testimony of plaintiff's proposed expert on causation was inadmissible such that defendant was entitled to judgment as a matter of law. Thus, our recitation of the pertinent facts will be appropriately focused.

As relevant to the issue on appeal, plaintiff alleged in her complaint that while she was staying in defendant's facility to recover from her right hip replacement surgery that had been performed approximately two weeks earlier, an unidentified nursing assistant helped transfer plaintiff from her bed and abruptly or suddenly pulled plaintiff's right leg. Plaintiff immediately experienced severe pain in her right leg and was taken to the hospital. Subsequent imaging studies of plaintiff's right hip revealed a "fracture of the medial wall of the acetabulum."

In her deposition, plaintiff described the incident in more detail. According to plaintiff, two nursing aids came into her room to help her get up from her bed to use the bathroom. Plaintiff

testified that the two aids were talking to each other and "not paying attention" as they stood on opposite sides of the end of the bed by plaintiff's feet. Plaintiff stated that suddenly, "one took my leg and yanked it that way, and the other one yanked it this way." Plaintiff heard "like a crack" and felt "[i]mmediate pain" beyond what she had otherwise experienced since her surgery.

Plaintiff's surgeon testified in his deposition that there had been no complications during plaintiff's original hip replacement surgery and that a post-operative x-ray had revealed no fractures. The imaging studies following the alleged incident with the two nursing assistants in defendant's facility showed a "change from the post-operative films," which plaintiff's surgeon found "compatible with some type of failure of the bone around the prosthesis that needed to be addressed." Plaintiff's surgeon explained that there was a fracture around the implant, with the cup of the implant protruding into the pelvis. As a result of the fracture, plaintiff's surgeon performed another operation to address the fracture and repair plaintiff's hip replacement.

Plaintiff subsequently initiated this medical malpractice action. Following discovery, defendant moved for summary disposition under MCR 2.116(C)(10) or, alternatively, for a *Daubert*[1] hearing. Defendant argued, "Plaintiffs only causation expert, Dr. Robert Corn, has acknowledged there is no medical literature to support his ultimate opinion that the acetabular protrusion occurred due to forced abduction of the legs as described and alleged by Plaintiff." Defendant further argued that Corn's testimony was unreliable and inadmissible under MRE 702, and that plaintiff accordingly could not demonstrate the requisite but-for causation, because Corn had "no support for his opinions and relie[d] on speculation and a 'cherry picking' of relevant facts and circumstances in claiming that but for the alleged event *as described by [plaintiff]* this injury would not have occurred."

Plaintiff argued in response that Corn's opinions were not speculative or unfounded. Plaintiff maintained that Corn's opinion was based on the evidence in the record, including plaintiff's testimony that she heard a crack and felt immediate pain after two aids pulled her legs in opposite directions coupled with the testimony of plaintiff's surgeon that the fracture was not present immediately following plaintiff's initial surgery. Corn stated that fractures result from the application of force that exceeds the strength of the bone, and he opined that plaintiff's hip fracture would not have occurred but for the trauma she suffered when the aids pulled her legs in opposite directions. Plaintiff argued that there was no evidence of any other trauma incurred by plaintiff. Furthermore, Corn had explained that there were not any studies of this specific mechanism of causation for such a fracture because, and not surprisingly, it would not be possible to find volunteers for such a study.

The court held a *Daubert* hearing during which plaintiff's expert and defendant's expert both testified. At the conclusion of the hearing, the trial court granted summary disposition in defendant's favor without clear explanation or elaboration of its reasoning. This appeal followed.

II. STANDARD OF REVIEW

---

[1] *Daubert v Merrell Dow Pharm, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993).

This Court reviews a trial court's decision on a motion for summary disposition de novo. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). On a motion under MCR 2.116(C)(10), the evidence must be considered in the light most favorable to the opposing party, and the motion may only be granted if no genuine issue of material fact exists. *Id.* at 160. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id.* (quotation marks and citation omitted).

To the extent the trial court's decision involved the exclusion of evidence,

[w]e review the circuit court's decision to exclude evidence for an abuse of discretion. "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." We review de novo questions of law underlying evidentiary rulings, including the interpretation of statutes and court rules. The admission or exclusion of evidence because of an erroneous interpretation of law is necessarily an abuse of discretion. [*Elher v Misra*, 499 Mich 11, 21; 878 NW2d 790 (2016) (citations omitted).]

III. ANALYSIS

A claim of medical malpractice requires a plaintiff to prove the following four elements:

(1) the appropriate standard of care governing the defendant's conduct at the time of the purported negligence, (2) that the defendant breached that standard of care, (3) that the plaintiff was injured, and (4) that the plaintiff's injuries were the proximate result of the defendant's breach of the applicable standard of care. [*Craig v Oakwood Hosp*, 471 Mich 67, 86; 684 NW2d 296 (2004).]

" 'Proximate cause' is a legal term of art that incorporates both cause in fact and legal (or 'proximate') cause." *Id.* (citation omitted). At issue in this case is the cause-in-fact element, which "generally requires showing that 'but for' the defendant's actions, the plaintiff's injury would not have occurred." *Teal v Prasad*, 283 Mich App 384, 391; 772 NW2d 57 (2009) (quotation marks and citation omitted). "Generally, an act or omission is a cause in fact of an injury only if the injury could not have occurred without (or 'but for') that act or omission. While a plaintiff need not prove that an act or omission was the *sole* catalyst for his injuries, he must introduce evidence permitting the jury to conclude that the act or omission was *a* cause." *Craig*, 471 Mich at 87 (citations omitted).

In a medical malpractice case, "[e]xpert testimony is essential to establish a causal link between the alleged negligence and the alleged injury." *Pennington v Longabaugh*, 271 Mich App 101, 104; 719 NW2d 616 (2006). An expert's opinion must be based on facts in evidence, and "an expert opinion based upon only hypothetical situations is not enough to demonstrate a legitimate causal connection between a defect and injury." *Teal*, 283 Mich App at 394-395 (quotation marks and citation omitted). A plaintiff must instead "set forth specific facts that would support a reasonable inference of a logical sequence of cause and effect." *Id.* (quotation marks and citation omitted).

Furthermore, "[t]he proponent of expert testimony in a medical malpractice case must satisfy the court that the expert is qualified under MRE 702, MCL 600.2955 and MCL 600.2169.[2]" *Elher*, 499 Mich at 22 (quotation marks and citation omitted). MRE 702 provides:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

MRE 702 "requires the circuit court to ensure that each aspect of an expert witness's testimony, including the underlying data and methodology, is reliable," and this rule of evidence "incorporates the standards of reliability that the United States Supreme Court articulated in *Daubert v Merrell Dow Pharm, Inc*,[ 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993),] in order to interpret the equivalent federal rule of evidence." *Elher*, 499 Mich at 22. "Under *Daubert*, the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id.* at 22-23 (quotation marks and citation omitted).

Similarly, MCL 600.2955(1) provides:

> (1) In an action for the death of a person or for injury to a person or property, a scientific opinion rendered by an otherwise qualified expert is not admissible unless the court determines that the opinion is reliable and will assist the trier of fact. In making that determination, the court shall examine the opinion and the basis for the opinion, which basis includes the facts, technique, methodology, and reasoning relied on by the expert, and shall consider all of the following factors:

> (a) Whether the opinion and its basis have been subjected to scientific testing and replication.

> (b) Whether the opinion and its basis have been subjected to peer review publication.

> (c) The existence and maintenance of generally accepted standards governing the application and interpretation of a methodology or technique and whether the opinion and its basis are consistent with those standards.

> (d) The known or potential error rate of the opinion and its basis.

> (e) The degree to which the opinion and its basis are generally accepted within the relevant expert community. As used in this subdivision, "relevant expert

---

[2] MCL 600.2169 pertains primarily to the general qualifications required for an individual to testify as an expert in medical malpractice actions. This statute is not relevant to this appeal.

community" means individuals who are knowledgeable in the field of study and are gainfully employed applying that knowledge on the free market.

(f) Whether the basis for the opinion is reliable and whether experts in that field would rely on the same basis to reach the type of opinion being proffered.

(g) Whether the opinion or methodology is relied upon by experts outside of the context of litigation.

"[A]lthough MCL 600.2955(1) explicitly requires the trial court to *consider* all seven of the factors it enumerates, the statute does not require that each and every one of those seven factors must favor the proffered testimony." *Chapin v A & L Parts, Inc*, 274 Mich App 122, 137; 732 NW2d 578 (2007) (opinion by DAVIS, J.). "The only proper role of a trial court at a *Daubert* hearing is to filter out expert evidence that is unreliable, not to admit only evidence that is unassailable. The inquiry is not into whether an expert's opinion is necessarily correct or universally accepted." *Id*. at 139.

Relatedly, as stated by our Supreme Court:

The United States Supreme Court has recognized . . . that the *Daubert* factors may or may not be relevant in assessing reliability, depending on the nature of the issue, the expert's expertise, and the subject of the expert's testimony. And even though the United States Supreme Court has stated that, in some cases, the relevant reliability concerns may focus upon personal knowledge or experience, the Court has also stated that even in those cases, the *Daubert* factors can be helpful, even if all of the factors may not necessarily apply in determining the reliability of scientific testimony. Accordingly, it bears repeating that it is within a trial court's discretion how to determine reliability. [*Elher*, 499 Mich at 24-25 (quotation marks and citations omitted).]

Here, the trial court failed to clearly explain its reasoning or the basis for its ruling granting summary disposition. From its ruling we glean that the trial court at least impliedly determined that Corn's proposed expert opinion testimony was inadmissible under MRE 702. However, the trial court did not engage in the requisite legal analysis for determining whether the testimony was admissible under MRE 702, MCL 600.2955, and the *Daubert* standard. *Elher*, 499 Mich at 22. Instead, the trial court appeared more concerned with conducting a miniature trial and adjudicating the battle between the parties' respective experts. Although the trial court asserted, "I don't think there's a factual dispute here where the Court is trying to determine who's telling the truth[,]" the trial court's other statements on the record belie that claim. The trial court stated as follows to plaintiff's counsel:

*The Court*: Okay. I understand your argument.

Here's the problem . . . that I see with your case. It's that your client has already testified, as well as other people I believe have speculated on her testimony anyway, of how this incident occurred.

So trying to now state after her testimony that it happened by trauma and because of the trauma that that, you know, that the Dr. Corn's testimony is supported or somehow, you know, cause and affect here, it doesn't match up to what she alleges occurred.

So what she alleges occurred, your client, the plaintiff, is that apparently there were two nurses pulling her legs in different directions.

And the problem with Dr. Corn's testimony, who clearly is very learned in this area, is that a traumatic event had to have occurred in order for her injury to— you know, in order for her injury.

But there is no support, peer review or otherwise, that supports the injury to the way she describes the incident, right?

So that's the problem here is that I think what you're trying to do now is change her testimony and now allege that her injury occurred from a traumatic event which it sounds like traumatic (Inaudible) but that's not her testimony. Are you with me?

So if that's what she had testified to that a traumatic event occurred, she fell or they dropped her or I don't know, something, then it seems to me that Dr. Corn's testimony would be supported.

But that's not what she claimed happened. What she claimed happened is that two nurses pulled her legs in different directions.

And I should add that there's no one to corroborate that testimony either (inaudible) meaningful. But the problem is, I don't see how that alleged incident could now be connected to the injury, so I think your case fails.

Dr. Corn cannot produce any peer review or other literature to support his position as it relates to the description of how these (Inaudible). . . .

It is thus clear that the main thrust of the trial court's analysis involved using the purported *Daubert* hearing as an opportunity to evaluate the strength of plaintiff's case and opine on the court's view of the evidentiary weight to be afforded to Corn's testimony. This is improper because

[a] *Daubert*-type hearing of this kind is *not* a judicial search for truth. The courts are unlikely to be capable of achieving a degree of scientific knowledge that scientists cannot. An evidentiary hearing under MRE 702 and MCL 600.2955 is merely a *threshold* inquiry to ensure that the trier of fact is not called on to rely in whole or in part on an expert opinion that is only masquerading as science. The courts are not in the business of resolving scientific disputes. [*Chapin*, 274 Mich App at 139 (opinion by DAVIS, J.).]

To the extent the trial court apparently placed emphasis on the lack of peer-reviewed articles cited by Corn, which in itself is one of the proper considerations, the trial court erred by treating that fact as dispositive and by failing to consider or address the other factors. See *Elher*, 499 Mich at 23 ("A lack of supporting literature, while not dispositive, is an important factor in determining the admissibility of expert witness testimony."). The trial court simply stated a conclusion without providing any analysis. By failing to apply the proper legal framework in reaching its decision, the trial court erred as a matter of law. *Id*. at 21. We thus vacate the trial court's order and remand for further proceedings not inconsistent with this opinion. See *Clerc v Chippewa Co War Mem Hosp*, 477 Mich 1067, 1068; 729 NW2d 221 (2007) (remanding to the trial court for a "proper inquiry" because the trial court failed to fulfill its gatekeeping role under MRE 702 where the trial court focused only on "its concern that plaintiff could not present specific studies on the growth rate of untreated cancer" and "did not consider the range of indices of reliability listed in MCL 600.2955").

Vacated and remanded. We do not retain jurisdiction. Plaintiff having prevailed may tax costs. MCR7.219(A).

/s/ Mark J. Cavanagh
/s/ Jane E. Markey
/s/ Stephen L. Borrello