# Order

**Michigan Supreme Court**
**Lansing, Michigan**

December 22, 2010

139860

RAQUEL ROBELIN, Conservator, for
TEIJA McCALL,
          Plaintiff-Appellee,

v

SPECTRUM HEALTH HOSPITALS, d/b/a
SPECTRUM HEALTH-EAST CAMPUS,
JOHN HARTMANN, M.D., and
ADVANTAGE HEALTH PHYSICIANS, P.C.,
          Defendants-Appellants.
_____/

Marilyn Kelly,
Chief Justice

Michael F. Cavanagh
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway
Alton Thomas Davis,
Justices

SC: 139860
COA: 279780
Kent CC: 04-010444-NH

On November 4, 2010, the Court heard oral argument on the application for leave to appeal the September 10, 2009 judgment of the Court of Appeals. On order of the Court, the application is again considered, and it is DENIED, there being no majority in favor of granting leave to appeal or taking other action.

KELLY, C.J. (*concurring*).

I concur with the order denying leave to appeal I do not believe that the lower courts misapplied the legal standards governing the admissibility of expert testimony or that allowing the testimony of plaintiff's expert was improper.

## FACTS AND PROCEEDINGS

Plaintiff's daughter, McCall, was born at defendant Spectrum Hospital in 2001. Shortly after her birth, she suffered a neonatal stroke. As a result, she is unable to walk without assistance and has had significant developmental delays in language and speech.

Plaintiff filed this medical malpractice action in 2004, alleging that McCall suffered hypoxia, which caused the stroke, which in turn caused neurological disabilities. The parties dispute when the stroke occurred and whether the health care professionals missed indicators of it.

In 2008, defendants moved to strike the testimony of Dr. Ronald Gabriel, plaintiff's causation expert. The trial court held a *Daubert*[1] hearing on the issue but ultimately denied the motion. The Court of Appeals denied interlocutory leave to appeal and denied defendants' motion for a peremptory reversal. Defendants appealed here, and we remanded the case to the Court of Appeals for consideration as on leave granted.[2]

In 2009, on remand, the Court of Appeals affirmed the trial court's ruling denying defendants' motion to exclude Dr. Gabriel's testimony.[3] The panel ruled that the trial court had been correct in concluding that Dr. Gabriel simply used the process of elimination, a time-honored and well-tested means of reaching a conclusion.

In 2010, defendants again sought leave to appeal in this Court. We heard oral argument on the application.[4]

ANALYSIS

MCL 600.2955(1) and MRE 702 require that an expert's opinion be "reliable," "assist the trier of fact," and be "the product of reliable principles and methods."[5] The Court of Appeals has held that, as long as the basic methodology and principles utilized by an expert are "sound and create a trustworthy foundation for the conclusion reached, the expert testimony is admissible no matter how novel."[6]

In this case, the trial court did not use the magic word "reliable" or the phrase "will assist the trier of fact." However, the trial court conducted a lengthy two-day *Daubert* hearing to evaluate Dr. Gabriel's proposed testimony. The court concluded that the testimony has "a foundation in fact and in science, and is based, at least in reasonable degree, upon demonstrable data."

In that ruling, the court discussed its "gatekeeping function" under *Daubert* and addressed each of the factors in MCL 600.2955(1). It certainly does not appear to me, as

---

[1] *Daubert v Merrell Dow Pharmaceuticals Inc*, 509 US 579; 113 S Ct 2786 (1993).

[2] *Robelin v Spectrum Health Hospitals*, 482 Mich 985 (2008).

[3] *Robelin v Spectrum Health Hospitals*, unpublished opinion per curiam of the Court of Appeals, issued September 10, 2009 (Docket No. 279780).

[4] *Robelin v Spectrum Health Hospitals*, 486 Mich 851 (2010).

[5] MCL 600.2955(1); MRE 702.

[6] *Nelson v American Sterilizer Co (On Remand)*, 223 Mich App 485, 492 (1997), citing *Daubert*, 509 US at 596.

it does to the dissenters, that the trial court's ruling involved an "oversight" as to what was required of it.

The dissenters also criticize the trial court's application to Dr. Gabriel's testimony of the factors set forth in MCL 600.2955(1)(a), (b), (e), and (g). Contrary to the dissenters, I believe that the trial court did conclude that Dr. Gabriel's theory had been subject to testing under MCL 600.2955(1)(a). The court noted that it would be impracticable to do prospective studies of this sort, so "replication" was impossible. However, it pointed to retrospective studies analyzing data that "does seem to indicate some causal nexus between hypoxia in the prenatal state and a neonatal stroke."

Regarding factor (b), the court explicitly found that journal articles in the record seemingly demonstrated the causal nexus that Dr. Gabriel asserted and had been subject to peer review. Hence, his opinion on causation and its basis have been subject to peer review. It appears that the dissent reads MCL 600.2955(1)(b) as requiring that a peer-reviewed article mention Dr. Gabriel by name and attribute the opinion specifically to him. This is an overly restrictive view of factor (b). The only requirement in MCL 600.2955(1)(b) is that the expert opinion and its basis have been subjected to peer review.

Regarding factor (g), the trial court specifically found that "the articles referenced certainly are outside the context of litigation." Simply because Dr. Gabriel's opinion is retrospective in nature does not preclude it or his methodology from being used outside the context of litigation.

Regarding factor (e), I agree with the dissent that the trial court should have considered a "relevant expert community" expanding beyond plaintiff's and defendants' experts. This factor directs trial courts to consider whether an opinion and its basis are generally accepted by "individuals who are knowledgeable in the field of study and are gainfully employed applying that knowledge on the free market." Thus, the trial court should have considered the broader expert community when evaluating this factor.

Nonetheless, because the trial court otherwise fulfilled its gatekeeper function, I do not believe that its misapplication of one of many evaluative criteria warrants reversal. Moreover, the trial court also applied the three other factors from MCL 600.2955(1), and the dissent does not take issue with its application of those factors.

The dissenters similarly err in their criticisms of the Court of Appeals decision. Their criticisms are premised on its conclusion that Dr. Gabriel's retrospective use of the process of elimination is flawed because there are no known predictors of neonatal strokes. Therefore, supposedly, defendants could not have acted prospectively to prevent McCall's stroke. However, Dr. Gabriel's proposed testimony was that evidence arising before and after McCall's birth demonstrated that she experienced hypoxia and a decreased heart output, leading to a blood clot and stroke. The medical literature in the

record establishes that perinatal asphyxia is considered the most common cause of neonatal stroke. If the treating physicians could have discerned that McCall suffered hypoxia, it was foreseeable that she could suffer a neonatal stroke. Thus, *Chapin v A & L Parts Inc*,[7] is not distinguishable and Dr. Gabriel's testimony was properly admitted.

Moreover, the dissenters assert that Dr. Gabriel's process of elimination methodology fails to establish that whatever remains is a proximate cause of the alleged injury. They are mistaken. It is certainly true that "correlation does not equal causation."[8] However, this argument has nothing to do with the *reliability* of Dr. Gabriel's opinion. Instead, what the dissenters seem to be arguing is that plaintiff's claim must fail as a matter of law for failure to show proximate cause. As we are not reviewing a motion for summary disposition, this argument is outside the scope of this Court's review.

## CONCLUSION

The trial court adequately performed its gatekeeper function under *Daubert*, MCL 600.2955, and MRE 702. Therefore, it did not "shirk[] its responsibility," as the dissent contends, nor was its decision to admit Dr. Gabriel's testimony an abuse of discretion. Thus, I concur in the order denying defendants' application for leave to appeal.

CAVANAGH and HATHAWAY, JJ., would affirm the judgment of the Court of Appeals.

CORRIGAN, J. (*dissenting*).

I would reverse the judgment of the Court of Appeals and remand for entry of an order granting defendants' motion to strike the testimony of plaintiff's proffered causation expert. By denying leave to appeal today, the Court fails to correct the misapplication of the legal standards that govern the admissibility of expert testimony. Accordingly, I respectfully dissent.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In May 2001, plaintiff's daughter Teija McCall suffered a neonatal stroke, which resulted in the now nine-year-old child experiencing severe developmental disabilities. On October 25, 2004, plaintiff filed this medical malpractice action, alleging that the stroke could have been prevented if defendants timely diagnosed and treated the fetal distress and immediately delivered McCall via caesarian section, rather than permitting plaintiff's vaginal delivery to proceed. Defendants disputed the timing and the cause of the stroke. Defendants also moved to strike the testimony of plaintiff's proffered

---

[7] 274 Mich App 122 (2007).

[8] *Post* at ___.

causation expert, Dr. Ronald Gabriel, arguing that Dr. Gabriel's proposed testimony did not meet the criteria set forth in MCL 600.2955 and MRE 702.

After conducting a two-day *Daubert*[9] hearing, the trial court issued an opinion from the bench. The court denied defendants' motion to strike, opining that it would admit Dr. Gabriel's testimony and "let the chips fall where they may." On remand from this Court, the Court of Appeals affirmed the trial court's decision.[10] The Court of Appeals concluded that the trial court did not abuse its discretion in admitting Dr. Gabriel's testimony, stating in part:

> The trial court correctly concluded that Dr. Gabriel simply used process of elimination, a sufficiently tested and time-honored way to arrive at an answer that it is even the quintessential Sherlock Holmes methodology. Stated in various ways in various books, once all impossibilities are filtered out, whatever remains, irrespective of its improbability, must be the truth.[10]
>
> _____
>
> [10] In *The Hound of the Baskervilles,* chapter 4, Sherlock Holmes observed that "we balance probabilities and choose the most likely. It is the scientific use of the imagination, but we have always some material basis on which to start our speculation."
>
> _____

Defendants applied for leave to appeal in this Court. We heard oral argument on the application.

## II. ANALYSIS

An abuse of discretion occurs when the trial court's decision to admit or exclude evidence, including expert testimony, falls outside the range of principled outcomes.[11] When a court admits legally inadmissible evidence, it necessarily abuses its discretion.[12] In this case, the trial court abused its discretion when the court denied defendants' motion

---

[9] *Daubert v Merrell Dow Pharmaceuticals Inc*, 509 US 579 (1993).

[10] *Robelin v Spectrum Health Hospitals*, unpublished opinion per curiam of the Court of Appeals, issued September 10, 2009 (Docket No. 279780).

[11] *Woodard v Custer*, 476 Mich 545, 557 (2006).

[12] *Craig v Oakwood Hosp*, 471 Mich 67, 76 (2004).

to strike the testimony of plaintiff's proffered causation expert because Dr. Gabriel's testimony fails to satisfy the exacting criteria of MCL 600.2955[13] and MRE 702.[14]

---

[13] MCL 600.2955 provides in pertinent part:

(1) In an action for the death of a person or for injury to a person or property, a scientific opinion rendered by an otherwise qualified expert is not admissible unless the court determines that the opinion is reliable and will assist the trier of fact. In making that determination, the court shall examine the opinion and the basis for the opinion, which basis includes the facts, technique, methodology, and reasoning relied on by the expert, and shall consider all of the following factors:

(a) Whether the opinion and its basis have been subjected to scientific testing and replication.

(b) Whether the opinion and its basis have been subjected to peer review publication.

(c) The existence and maintenance of generally accepted standards governing the application and interpretation of a methodology or technique and whether the opinion and its basis are consistent with those standards.

(d) The known or potential error rate of the opinion and its basis.

(e) The degree to which the opinion and its basis are generally accepted within the relevant expert community. As used in this subdivision, "relevant expert community" means individuals who are knowledgeable in the field of study and are gainfully employed applying that knowledge on the free market.

(f) Whether the basis for the opinion is reliable and whether experts in that field would rely on the same basis to reach the type of opinion being proffered.

(g) Whether the opinion or methodology is relied upon by experts outside of the context of litigation.

[14] MRE 702 provides:

If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and

The trial court erred when it failed to expressly determine that Dr. Gabriel's proposed testimony is reliable and that his causation opinion would assist the fact-finder. MCL 600.2955(1) states that "[i]n an action for the death of a person or for injury to a person or property, a scientific opinion rendered by an otherwise qualified expert is not admissible *unless the court determines that the opinion is reliable and will assist the trier of fact*." The language of MRE 702 underscores the importance of admitting reliable expert testimony that will assist the fact-finder. MRE 702 provides in pertinent part:

> If the court determines that scientific, technical, or other specialized knowledge *will assist the trier of fact to understand the evidence or to determine a fact in issue*, a witness qualified as an expert . . . may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) *the testimony is the product of reliable principles and methods*, and (3) *the witness has applied the principles and methods reliably to the facts of the case*.

Both the statute and the evidentiary rule emphasize the court's obligation to ensure that any expert testimony is reliable and will assist the fact-finder. However, the record reflects that the trial court did not make either determination. The record also reflects that the trial court failed to reference MRE 702 or determine that Dr. Gabriel's testimony: "(1) . . . is based on sufficient facts or data, (2) . . . is the product of reliable principles and methods, *and* (3) the witness has applied the principles and methods reliably to the facts of the case." Contrary to Chief Justice Kelly's view, the absence of these critical determinations on the record before us should not be minimized as a failure to "use the magic word" or sidestepped by characterizing the two-day *Daubert* hearing as "lengthy."[15] Rather, these apparent oversights demonstrate an inadequate exercise of the court's gatekeeping role and bolster the conclusion that the trial court abused its discretion when it denied defendants' motion to strike Dr. Gabriel's testimony.[16]

Although the trial court addressed the criteria set forth in MCL 600.2955(1)(a)-(g), the court erred when it failed to apply each criterion with diligence or precision. For

---

methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

[15] *Ante* at __.

[16] See *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 780 (2004), quoting *Kumho Tire Co Ltd v Carmichael*, 526 US 137, 158-159 (1999) (Scalia, J., concurring) ("While the exercise of this gatekeeper role is within a court's discretion, a trial judge may neither 'abandon' this obligation nor 'perform the function inadequately.'").

example, the trial court acknowledged that Dr. Gabriel's opinion had not been "subjected to scientific testing and replication," contrary to § 2955(1)(a). Yet the court concluded that plaintiff met this criterion, even though it expressly found that plaintiff did not, and could not, satisfy § 2955(1)(a). The trial court also determined that plaintiff satisfied § 2955(1)(b) without identifying any publication that had subjected Dr. Gabriel's opinion to peer review. In effect, the court inverted § 2955(1)(b), which instructs it to consider "[w]hether the opinion and its basis have been subjected to peer review publication," and not whether Dr. Gabriel can extrapolate any modicum of support for his opinion from the inconclusive medical literature published to date. Additionally, the court concluded that plaintiff satisfied § 2955(1)(e), which directs the trial court to consider "[t]he degree to which the opinion and its basis are generally accepted within the relevant expert community." This finding is puzzling because the court limited its discussion of the "relevant expert community," which § 2955(1)(e) defines as "individuals who are knowledgeable in the field of study and are gainfully employed applying that knowledge on the free market," to the two causation experts who testified. Also puzzling is the trial court's failure to identify any member of the relevant expert community besides Dr. Gabriel who "generally accepted" his opinion.[17] Further, the trial court determined that plaintiff satisfied § 2955(1)(g) although the admittedly retrospective nature of Dr. Gabriel's opinion precludes it from being "relied upon by experts outside of the context of litigation." That is, Dr. Gabriel's opinion has no practical value whatsoever for those interested in predicting and preventing neonatal strokes because it relies entirely on a retrospective analysis of case-specific factors in the context of litigation. The dearth of findings that actually satisfy the criteria of § 2955(1) exposes the trial court's abuse of discretion.

The Court of Appeals essentially glossed over the trial court's flawed analysis and concluded that Dr. Gabriel's testimony should reach a jury because Dr. Gabriel derived his opinion from the process of elimination or "the quintessential Sherlock Holmes methodology." However, the Court of Appeals offhand observation ignores the unambiguous language of the statute and the evidentiary rule. No provision in MCL 600.2955 or MRE 702 excuses the trial court from fulfilling its obligation as gatekeeper when an expert claims that the methodology underlying his opinion derives from the process of elimination. And referring to "the quintessential Sherlock Holmes methodology" does not negate the fact that the trial court's role as gatekeeper "applies to *all stages* of expert analysis."[18] Indeed, the "[c]areful vetting of all aspects of expert

---

[17] The other causation expert identified by the court, Dr. Michael Johnston, testified that "[t]here's no scientific evidence for what [Dr. Gabriel] says[,]" and that "scientifically, what has been said, on paper and by deposition by Dr. Gabriel, is completely wrong."

[18] *Gilbert*, 470 Mich at 782 (emphasis in original).

testimony is especially important when an expert provides testimony about causation."[19] The trial court was obligated to thoroughly vet Dr. Gabriel's testimony under the criteria set forth in MCL 600.2955 and MRE 702. Quite simply, the court shirked its responsibility. The Court of Appeals clearly erred when it affirmed the trial court's misapplication of the legal standards governing the admissibility of expert testimony.

The Court of Appeals also clearly erred when it endorsed Dr. Gabriel's opinion, which purports to establish causation based on his retrospective analysis of several factors. As the Court of Appeals acknowledged, "Dr. Gabriel did not rely on any of the medical evidence for its prospective, predictive value, but rather as evidence upon which to retrospectively exclude impossible scenarios." The notion that Dr. Gabriel can testify as a causation expert based on his retrospective use of the "process of elimination" is flawed for three reasons.

First, it is undisputed that there are no known predictors of neonatal strokes. As the medical literature relied upon by Dr. Gabriel establishes, because neonatal strokes occur unexpectedly and without any known indicia, there is no foreseeable basis from which defendants could have acted to prospectively prevent McCall's stroke.[20] Critically, proximate causation requires *foreseeability*, yet Dr. Gabriel—plaintiff's proffered causation expert—cannot establish that McCall's stroke could have been predicted and avoided.

Second, the mere act of eliminating several possibilities through the process of elimination does not necessarily establish that whatever remains is a proximate cause of the injury alleged.[21] It is axiomatic that correlation does not equal causation.

---

[19] *Id.*

[20] See e.g., Jeffery M. Perlman et al., *Neonatal Stroke: Clinical Characteristics and Cerebral Blood Flow Velocity Measurements*, Pediatric Neurology Vol. 11 No. 4, at 281 (1994) ("The data indicate that infants who develop neonatal stroke cannot be distinguished from infants who do not develop the lesion by current markers of perinatal distress. *Because neonatal stroke frequently occurs as an unanticipated event, prevention may not be possible*.").

[21] For the process of elimination to apply in the first instance, there must be some discrete universe of possibilities that have been established through the prerequisite scientific testing. Once the probabilities have been narrowed to some certain and definite number, it is logical to apply the process of elimination to establish proximate cause. In this case, it is undisputed that there are *no known predictors* of neonatal strokes. Because of the lack of any certain and definite number of predictors, indeed any known predictors at all, deductive reasoning through the process of elimination is simply inapt. This does not mean that I question the value of deductive reasoning and the process of elimination in general, only that it has been applied here in circumstances where it cannot logically produce the conclusion drawn.

Nonetheless, Dr. Gabriel seeks to testify that a correlating event was the causal event because there are *no other known causes*. Even a cursory reading of MCL 600.2955 and MRE 702 establishes that the act of "ruling out" possibilities does not, and should not, automatically "rule in" the causation sought to be established by plaintiff's expert here.

Third, the lone case cited by the Court of Appeals to support its endorsement of Dr. Gabriel's retrospective use of the process of elimination, *Chapin v A & L Parts Inc*, 274 Mich App 122 (2007), is distinguishable from this case. In *Chapin*, the lack of epidemiological studies establishing a link between the plaintiff's occupational exposure to brake dust and mesothelioma was not outcome determinative because the link between mesothelioma and asbestos exposure was already established. As a result, deductive logic provided an appropriate means of concluding that the plaintiff's occupational exposure to asbestos caused his mesothelioma. In this case, however, there is no established link between any known predictor and neonatal strokes, as Dr. Gabriel admitted by stating that "you cannot use fetal monitoring in a prospective or predictive manner because there is none." At best, Dr. Gabriel's opinion amounts to an exercise in retrospective speculation, rather than viable deductive logic. His opinion fails to satisfy the legal standards governing the admissibility of expert testimony, and the Court of Appeals clearly erred when it reached a contrary conclusion.

## III. CONCLUSION

Because the trial court failed to carefully consider the testimony of plaintiff's proffered causation expert under MCL 600.2955 and MRE 702, its decision to admit Dr. Gabriel's testimony fell outside the range of principled outcomes. The Court of Appeals clearly erred when it failed to correct the trial court's misapplication of the legal standards that govern the admissibility of expert testimony. I would reverse the judgment of the Court of Appeals and remand for entry of an order granting defendants' motion to strike. Consequently, I dissent from the Court's denial of leave to appeal.

YOUNG and MARKMAN, JJ., join the statement of CORRIGAN, J.

DAVIS, J., not participating. I recuse myself and am not participating because I was on the Court of Appeals panel in this case. See MCR 2.003(B).



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

December 22, 2010

_Corbin R. Davis_
Clerk

d1221