# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

ANTONIO DIONCA LAY,

Defendant-Appellant.

UNPUBLISHED
August 1, 2017

No. 330880
Kent Circuit Court
LC No. 15-002584-FC

Before: MARKEY, P.J., and MURPHY and METER, JJ.

PER CURIAM.

A jury convicted defendant of assault with intent to rob while armed, MCL 750.89; felon in possession of a firearm (felon-in-possession), MCL 750.224f; possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b; and assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84. The trial court sentenced defendant as a third-offense habitual offender, MCL 769.11, to 8 to 20 years' imprisonment for the AWIGBH conviction, 35 to 90 years' imprisonment for the assault with intent to rob while armed conviction, 4 to 10 years' imprisonment for the felon-in-possession conviction, and 2 years' imprisonment, preceding the other sentences, for the felony-firearm conviction. Defendant appeals his convictions as of right. We affirm.

Late in the evening on November 7, 2014, the victim went to Gardella's bar in downtown Grand Rapids. While there, the victim approached a man, later identified as Tavis Miller, and asked him if he had any cocaine to sell. Miller asked defendant, who said that he did have some in a car.

The victim left Gardella's with Miller and defendant, and they walked over to the car in question. When they got to the car, the victim sat in the backseat, Miller sat in the front passenger seat, and defendant sat in the driver's seat. The victim started counting his money. Defendant asked Miller to open the glovebox and get him "the stuff." Miller opened the glovebox and saw a gun inside. Miller "froze" when he saw the gun. Defendant reached over to the glovebox and grabbed the gun. Defendant pointed the gun at the victim's face and demanded that the victim hand over his money. The victim opened the car door to escape, and defendant shot him. Defendant then drove off. The victim was able to identify Miller. After police arrested Miller, he identified defendant.

-1-

At trial, over defendant's objection, the court allowed in evidence of a prior assault that defendant committed against his girlfriend's mother, Patricia Bailey, using the same handgun that he was purported to have used to shoot the victim in this case. The trial court stated,

> I think it is relevant evidence under MRE 401. Under MRE 403, and the balancing test, I don't think it's so prejudicial as to need to be excluded . . . . I think it's part of their case in chief as to how they identify a gun, and that they're left to their proofs with regards to that. So I will admit that.

At trial, Bailey testified that early in 2014, defendant hit her over the head with a black handgun. She stated that she would recognize the handgun again if she saw it. Bailey then identified the gun admitted into evidence as the gun that defendant used to hit her.

The prosecution also called Grand Rapids Police Detective Timothy DeVries as a witness. Detective DeVries testified that he completed a course in investigative techniques for modern telecommunications through the Department of Justice. He also testified that he had training in cellular telephone analysis and in "call detail record" and cellular telephone tower analysis. The trial court admitted Detective DeVries as an expert in the area of forensic cellular telephone analysis.

Detective DeVries testified that he received defendant's cellular telephone records, including a Call Detail Report (CDR), from defendant's cellular telephone service provider. The CDR included telephone numbers, times, and dates for incoming and outgoing telephone calls and text messages, as well as the coordinates for which cellular towers handled the calls or texts.

Detective DeVries testified that, due to his training, he was able to determine a cellular telephone's approximate location at the time a call or text was received or made. Detective DeVries testified that every time a call is made, a cellular telephone "reaches out" to the closest tower with the strongest signal, which is then recorded on the CDR.

Detective DeVries testified that, by matching the outgoing calls on defendant's CDR to a number matching Miller's cellular telephone number, he determined that defendant called Miller at 11:02 p.m. on November 7, 2014. Detective DeVries also determined that Miller called defendant's cellular telephone number at 1:57 a.m. on November 8, 2014. Detective DeVries determined that the tower defendant's cellular telephone used to route calls during a particular period was the closest tower to the area where the crime occurred, with the inference being that defendant was in the area where the crime occurred, at the time it occurred.

Miller also testified as a witness for the prosecution. He identified defendant as the person who shot the victim. Miller testified that he was with defendant on the night of the shooting. He corroborated the victim's story about himself, the victim, and defendant getting into the car that defendant was driving under the impression that defendant was selling cocaine to the victim. Miller testified that defendant reached over and grabbed a gun from the glovebox, pointed it at the victim, and demanded money. Miller testified that when the victim tried to flee the car, defendant shot him. Miller identified the gun that was admitted into evidence as the gun that defendant used to shoot the victim. He also testified that he saw defendant with that same gun multiple times in the past.

During cross-examination and recross-examination, defense counsel elicited statements from Miller that he initially lied to the police when giving his statement regarding this case. Counsel also made it clear that Miller was testifying as a witness for the prosecution in return for a substantial reduction in the charges against him, his sentence, and his bond.

At the close of proofs, the trial court instructed the jury. As part of those instructions, the trial court stated:

> You have heard testimony from a witness, Tavis Miller. That witness made made [sic] an agreement with the prosecutor about charges against him in exchange for his testimony at this trial. You are to consider this evidence only as it relates to his credibility, as it may tend to show the witness' bias or self interest.

Defendant first argues that he was denied his right to a fair trial when the court admitted evidence of his prior felonious assault. We disagree. A trial court's decision to admit evidence is reviewed for an abuse of discretion, and a trial court abuses its discretion when it chooses an outcome that is outside of the range of reasonable and principled outcomes. *People v Yost*, 278 Mich App 341, 353; 749 NW2d 753 (2008). "[I]t is necessarily an abuse of discretion to admit evidence that is inadmissible as a matter of law." *Id*. A trial court's decision on a close evidentiary question generally cannot be considered an abuse of discretion. *People v Sabin*, 463 Mich 43, 67; 614 NW2d 888 (2000).

Although defendant objected to the admission of Bailey's testimony regarding defendant's previous assault with a handgun that appeared to be same as the one used in this case on the ground that it was evidence of a prior bad act in violation of MRE 404(b), we find that the evidence was "admissible evidence under MRE 401, without reference to MRE 404(b)." *People v Hall*, 433 Mich 573, 580; 447 NW2d 580 (1989). See also *People v Vandervliet*, 444 Mich 52, 64; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994) ("if the proffered other acts evidence is logically relevant, and does not involve the intermediate inference of character, Rule 404(b) is not implicated").

MRE 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Here, the prosecution sought to introduce "[e]vidence of . . . defendant's possession of a weapon of the kind used in the offense with which he is charged[.]" *Hall*, 433 Mich at 580. It sought to do so through Bailey's testimony that defendant assaulted her using a handgun that appeared to be the same gun used in the assault against the victim in this case. The purpose of the testimony was to show defendant's knowing possession and control of a handgun similar to the one used in this case. The testimonial evidence of defendant's possession of the handgun in the assault against Bailey was relevant to make defendant's identity as the gunman in this case "more probable . . . than it would be without the evidence." MRE 401. "The fact that establishing defendant's possession of the [handgun] also necessarily constitutes evidence of a separate crime, wrong, or act [the assault against Bailey] does not alone bring the proof within the compass of MRE 404 preclusion." *Hall*, 433 Mich at 583. Therefore, the trial court did not abuse its discretion in admitting the evidence, because it was relevant under MRE 401 without

reference to 404(b). "Since we find this evidence to be admissible independently of MRE 404(b), we need not address the application of that rule to the facts before us." *Hall*, 433 Mich at 587.

Defendant next argues that Detective DeVries's expert testimony regarding the location of defendant's cellular telephone was inadmissible under MRE 702, and thus he was denied his constitutional right to a fair trial. We disagree. Defendant did not object at trial to Detective DeVries's qualification as an expert witness or to his testimony, and therefore, his claim is unpreserved. See *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). Unpreserved claims of constitutional error are reviewed for plain error affecting the defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). Plain error requires showing that (1) error occurred, (2) the error was clear or obvious, and (3) the error affected defendant's substantial rights. *People v Kimble*, 470 Mich 305, 312; 684 NW2d 669 (2004).

Defendant claims that Detective DeVries's testimony fails the *Daubert* factors, and therefore, is unreliable and inadmissible. We disagree. In *Daubert v Merrell Dow Pharms, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993), the United States Supreme Court outlined a nonexhaustive list of factors that the trial courts could use to determine the reliability of scientific expert testimony. Michigan has codified *Daubert* into its own rule of evidence, MRE 702. The purpose of the rule is to require trial judges to act as gatekeepers and exclude unreliable expert testimony, in conformance with *Daubert*. See MRE 702, staff comments. The court rule "incorporates the requirements" of *Daubert*. *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008).

MRE 702 requires that the court ensure that each aspect of an expert witness's proffered testimony is reliable. *Chapin v A & L Parts, Inc*, 274 Mich App 122, 126; 732 NW2d 578 (2007). MRE 702 states:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Here, Detective DeVries was qualified as an expert in forensic cellular telephone analysis.

Regarding the first requirement of MRE 702, Detective DeVries's testimony was based on sufficient facts or data. Detective DeVries testified that he received defendant's cellular telephone records, including a CDR, from the cellular service provider that defendant used. The CDR included phone numbers, dates, and times for incoming and outgoing phone calls and text messages. It also included the coordinates for which cellular telephone towers handled the calls or texts. These were sufficient facts and data.

-4-

Second, Detective DeVries's testimony was the product of reliable principles and methods. Detective DeVries testified that he completed a course in investigative techniques for modern telecommunications through the Department of Justice. He also testified that he had training in cellular telephone analysis and "call detail record" and cellular telephone tower analysis. Detective DeVries testified that, due to his training, he is able to determine a cellular telephone's approximate location at the time a call or text is received or made by using the coordinates of a cellular telephone tower. Detective DeVries testified that every time a call is made, a cellular telephone "reaches out" to the closest tower with the strongest signal, which is then recorded on the CDR.

Defendant relies on a case from a foreign jurisdiction to support his argument that Detective DeVries's testimony was flawed; he cites *United State v Reynolds*, 626 Fed Appx 610, 615 (ED Mich, 2015),[1] which states, "While cellphones are designed to connect to the tower with the strongest signal, that tower might not actually be the closest because factors such as weather, obstructions, and network traffic can cause a call to connect to a tower farther away." Even if this case were binding on us, Detective DeVries indicated that calls connect with the "closest tower *with the strongest signal* . . . ." He also noted that at times of heavy cellular traffic, calls can be bumped. As such, the jury heard Detective DeVries's testimony in appropriate context and no clear error is apparent.

Finally, Detective DeVries applied the principles and methods reliably to the facts of the case. Indeed, Detective DeVries used the coordinates provided on the CDR to determine which towers defendant's cellular telephone used to route calls around the time of the crimes.

It was not plain error affecting defendant's substantial rights for the trial court to admit Detective DeVries's testimony. Defendant was not denied his constitutional right to a fair trial.

Defendant next argues that the trial court erred in failing to include in the jury instructions the standard instructions regarding undisputed accomplice testimony. We disagree. Defendant did not request that the trial court give the standard accomplice cautionary jury instruction, nor did defendant object to the failure to give such an instruction. Therefore, defendant did not preserve this issue for appellate review. An unpreserved claim that the trial court failed to give a jury instruction is reviewed for plain error affecting defendant's substantial rights. *People v Young*, 472 Mich 130, 135; 693 NW2d 801 (2005).

Defendant claims that the trial court should have given jury instruction M Crim JI 5.6, which states:

> (1) You should examine an accomplice's testimony closely and be very careful about accepting it.

---

[1] We recognize that cases from foreign jurisdictions are not binding, but may be persuasive. *People v Campbell*, 289 Mich App 533, 535; 798 NW2d 514 (2010).

(2) You may think about whether the accomplice's testimony is supported by other evidence, because then it may be more reliable. However, there is nothing wrong with the prosecutor's using an accomplice as a witness. You may convict the defendant based only on an accomplice's testimony if you believe the testimony and it proves the defendant's guilt beyond a reasonable doubt.

(3) When you decide whether you believe an accomplice, consider the following:

(a) Was the accomplice's testimony falsely slanted to make the defendant seem guilty because of the accomplice's own interests, biases, or for some other reason?

(b) Has the accomplice been offered a reward or been promised anything that might lead [him / her] to give false testimony? [*State what the evidence has shown. Enumerate or define reward.*]

(c) Has the accomplice been promised that [he / she] will not be prosecuted, or promised a lighter sentence or allowed to plead guilty to a less serious charge? If so, could this have influenced [his / her] testimony?

[(d) Does the accomplice have a criminal record?]

(4) In general, you should consider an accomplice's testimony more cautiously than you would that of an ordinary witness. You should be sure you have examined it closely before you base a conviction on it.


MCR 2.512(D)(2) states, "Pertinent portions of the instructions approved by the . . . Committee on Model Criminal Jury Instructions . . . must be given in each action in which jury instructions are given if (a) they are applicable, (b) they accurately state the applicable law, and (c) *they are requested by a party*." (Emphasis added.) Additionally, MCL 768.29 states, "The failure of the court to instruct on any point of law shall not be ground for setting aside the verdict of the jury unless such instruction is requested by the accused." Here, neither party requested that the trial court give a cautionary instruction on accomplice testimony. Therefore, the trial court was not required to give the instruction.

Additionally, it was not error for the trial court to fail to instruct the jury on accomplice testimony sua sponte. "[R]eversal [is] not required where the accomplice's potential credibility problems have been plainly presented to the jury by other means, such as through defense counsel's cross-examination of the alleged accomplice." *Young*, 472 Mich at 139. Here, defense counsel demonstrated Miller's potential credibility problems through cross-examination and recross-examination. Through cross-examination and recross-examination, the jury was made aware that Miller was an accomplice to the crime and that, due to his status and the benefits offered to him by the prosecution, his testimony may not be credible.

Further, while instructing the jury, the court stated,

You have heard testimony from a witness, Tavis Miller. That witness made made [sic] an agreement with the prosecutor about charges against him in exchange for his testimony at this trial. You are to consider this evidence only as it relates to his credibility, as it may tend to show the witness' bias or self interest.

Under all the circumstances, it was not an abuse of discretion, nor was it plain error affecting defendant's substantial rights, for the trial court to refrain from giving the standard jury instruction on undisputed accomplice testimony.

Even assuming that there was error, the error did not seriously affect the fairness, integrity, or public reputation of the judicial proceedings. See *Carines*, 460 Mich at 763-764. Defense counsel vigorously cross-examined and recross-examined Miller. The examinations revealed potential credibility issues, which the jury had the ability to take into consideration while deliberating. Moreover, the trial court did generally instruct the jury regarding Miller's agreement to testify for the prosecution. No information was hidden or kept from the jury. Therefore, any alleged error did not seriously affect the fairness, integrity, or public reputation of the judicial proceedings.

Defendant next argues that his trial counsel was ineffective for failing to request the standard jury instruction on undisputed accomplice testimony and for failing to object to Detective DeVries's expert testimony regarding the location of defendant's cellular telephone. We disagree. Generally, a claim of ineffective assistance of counsel is a mixed question of fact and constitutional law; this Court reviews the trial court's findings of fact for clear error, and it reviews questions of constitutional law de novo. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). Although defendant preserved the issue by raising it in this Court, because a *Ginther*[2] hearing was never held, review is limited to mistakes apparent on the record. See *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

In order to obtain relief for ineffective assistance of counsel, a defendant must show that counsel' performance fell below an objective standard of reasonableness and that, but for counsel's error, a different result would have been reasonably probable. *People v Russell*, 297 Mich App 707, 715-716; 825 NW2d 623 (2012). The Court must analyze the issue with a strong presumption that trial counsel's conduct fell within the wide range of reasonable professional assistance, and the standard requires that the defendant overcome the presumption that the challenged action or inaction might be considered sound trial strategy. *People v Leblanc*, 465 Mich 575, 578; 640 NW2d 246 (2002). "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Defendant first argues that defense counsel was ineffective for failing to request a standard jury instruction for an undisputed accomplice's testimony, M Crim JI 5.6. The jury instruction essentially informs the jury that it should be cautious in accepting the accomplice-

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

-7-

witness's testimony, because the witness may not be credible due to his involvement in the case and potential benefits promised to him in return for testifying. Here, however, defense counsel cross-examined and recross-examined Miller. As discussed above, defense counsel essentially attacked Miller's credibility and suggested to the jury that, as an accomplice to the crime, and due to the benefits he was promised in return for testifying, his testimony should not be believed. Although it may have been better strategy to request the jury instruction, defendant has not shown that defense counsel's failure to do so fell below an objective standard of reasonableness.

Even assuming that defense counsel's failure to request the jury instruction was error, the error was not prejudicial to defendant. As discussed above, defense counsel attacked Miller's credibility during cross-examination and recross-examination. Moreover, the trial court did give the following instruction:

> You have heard testimony from a witness, Tavis Miller. That witness made made [sic] an agreement with the prosecutor about charges against him in exchange for his testimony at this trial. You are to consider this evidence only as it relates to his credibility, as it may tend to show the witness' bias or self interest.

The jury was aware of the potential credibility issues with Miller. It was aware that it should consider Miller's relationship to the crime, as well as the benefits he received in return for his testimony, when determining his credibility. Despite this knowledge, it appears that the jury still gave relatively strong weight to Miller's testimony. Defendant has not shown that, had defense counsel requested the additional jury instruction regarding accomplice testimony, the jury would have given less weight to Miller's testimony, and thus a different result would have been reasonably probable.

Defendant next argues that defense counsel's behavior fell below an objective standard of reasonableness because counsel did not object to Detective DeVries's testimony regarding defendant's location based on CDR analysis. We disagree. Indeed, even if defense counsel had objected to Detective DeVries's testimony, the court would have done an analysis under MRE 702, and defendant has simply not adequately demonstrated that such an analysis would have resulted in exclusion of the evidence. Therefore, defense counsel was not ineffective for failing to object to Detective DeVries's testimony.

Defendant next argues that he was deprived of the effective assistance of counsel due to counsel's failure to move to exclude a surprise witness, Steve Schabel. We disagree.

We do agree that counsel erred by not objecting to Schabel as a surprise witness. MCL 767.40a(3) states, "Not less than 30 days before the trial, the prosecuting attorney shall send to the defendant or his or her attorney a list of the witnesses the prosecuting attorney intends to produce at trial." Here, the prosecution did provide defendant with a list of potential witnesses. However, Schabel was not listed anywhere on that list. Therefore, counsel should have sought to exclude Schabel as a witness pursuant to MCL 767.40a(3). However, we do not agree that, absent counsel's failure, a different result was reasonably probable. Defendant argues that Schabel's testimony was the only evidence connecting defendant to the gun. However, at trial, Bailey testified that early in 2014 defendant hit her over the head with a black handgun. She

-8-

stated that she would recognize the handgun again if she saw it. Bailey then identified the gun admitted into evidence as the gun that defendant used to hit her. Bailey, as a witness the prosecution identified it might call at trial, provided an independent basis for connecting defendant to the gun used to shoot the victim. Miller also connected defendant to the gun. Therefore, defendant has not met his burden of showing that counsel's error was prejudicial. See *Russell*, 297 Mich App at 715-716. Accordingly, defendant was not denied the effective assistance of counsel.

Defendant next argues that he constructively deprived of his right to counsel due to trial counsel's alleged failure to investigate the case and subject the prosecution's case to meaningful adversarial testing. We disagree.

When alleging ineffective assistance of counsel due to counsel's unpreparedness, a defendant must show prejudice resulting from the lack of preparation. *People v Caballero*, 184 Mich App 636, 640; 459 NW2d 80 (1990). The failure to interview witnesses does not alone establish inadequate preparation. *Id*. at 642. "It must be shown that the failure resulted in counsel's ignorance of valuable evidence which would have substantially benefited the accused." *Id*. Certain circumstances, including a complete denial of counsel or an entire failure to subject the prosecutor's case to meaningful adversarial testing, are so likely to prejudice the defendant that no showing of prejudice is required. *United States v Cronic*, 466 US 648, 659; 104 S Ct 2039; 80 L Ed 2d 657 (1984); *People v Frazier*, 478 Mich 231, 243; 733 NW2d 713 (2007). However, "[t]he *Cronic* test applies when the attorney's failure is *complete*, while the [standard] test applies when counsel failed at specific points of the proceeding." *Frazier*, 478 Mich App at 244.

In this case, defendant alleges that counsel failed to subject the prosecution's case to meaningful adversarial testing. Defendant bases his allegation on the assertion that counsel failed to investigate and interview witnesses at a point or points in time, specifically, before trial. This does not amount to a complete failure in representation. Therefore, we find that counsel's performance should be reviewed under the typical standard.

Defendant asserts that counsel was ineffective by failing to investigate the case and interview witnesses. However, defendant has not provided any evidence to support his assertions. Moreover, defendant has failed to assert that counsel's alleged failing resulted in counsel's ignorance of any evidence.

Counsel cross-examined almost every witness that the prosecution called. Counsel pointed out inconsistencies in testimonies, impeached witnesses' credibility, emphasized biases and motivations, and highlighted flaws in police investigations. Defendant has not shown that the outcome of the trial would have been different had counsel investigated or interviewed the witnesses before trial. Accordingly, we hold that counsel's alleged failure to investigate the case and interview witnesses before trial did not deprive defendant of his Sixth Amendment right to counsel or otherwise prejudice defendant.

Defendant next argues that the trial court failed to instruct the jury that the prosecution had to prove each element of the crimes beyond a reasonable doubt. We disagree. Defendant did not object to the challenged instructions at trial, and in fact, agreed to the instructions as

given because his counsel stated, "No, Your Honor," when asked if anything needed to be placed on the record. Therefore, defendant has waived this issue. *People v Carter*, 462 Mich 206, 214; 612 NW2d 144 (2000). Regardless, our review of the record reveals that the trial court's later instructions did properly convey to the jury that the prosecutor had to prove each of the elements beyond a reasonable doubt.

Defendant lastly argues that the trial court invaded the province of the jury and pierced the veil of impartiality by ordering record confirmation of the witnesses' in-court identification of defendant. We disagree. In several instances, the trial court merely ordered that the record should reflect a particular witness's identification of defendant in court. Nothing in the court's conduct in this respect implicates judicial partiality. See *People v Stevens*, 498 Mich 162, 168; 869 NW2d 233 (2015).

Affirmed.

/s/ Jane E. Markey
/s/ William B. Murphy
/s/ Patrick M. Meter