*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AH MINOR by Next Friend CRYSTAL HAYNES
and CRYSTAL HAYNES Individually,

        Plaintiffs-Appellees,

v

MERCY HEALTH PARTNERS, SARAH
HELLMAN, D.O., DAVID A. CREE, M.D.,
DANIELLE R. SNYDER, D.O., and AUSTIN
FINKLE, D.O., also known as AUSTIN FINKLEA,
D.O.,

        Defendants-Appellants,

and

JENNIFER MARY SCHILES, D.O., and MICHAEL
D. ENGEL, D.O.,

        Defendants.

UNPUBLISHED
May 12, 2025
2:11 PM

No. 364939
Muskegon Circuit Court
LC No. 2019-000104-NH

AH MINOR by Next Friend CRYSTAL HAYNES
and CRYSTAL HAYNES Individually,

        Plaintiffs-Appellees,

v

MERCY HEALTH PARTNERS, DR. SARAH
HOLZGEN, DR. GUSTAV BARKETT, DR.
MEREDITH MANN, DR. KRISTEN SJOSTRAND,
DR. WINTER DOWLAND, and ELIZABETH
MEACHAM, F.N.P.,

        Defendants-Appellants,

and

No. 364940
Muskegon Circuit Court
LC No. 2020-001970-NH

DR. EMILY ZOULEK,

                Defendant.

---

Before:  GADOLA, C.J., and WALLACE and ACKERMAN, JJ.

PER CURIAM.

In this consolidated interlocutory appeal in a medical malpractice case, defendants[1] appeal by leaved granted[2] the trial court's order denying their motions to exclude plaintiffs' causation and standard-of-care experts on the basis that those experts' opinions were unreliable.  On appeal, defendants argue that the trial court applied the improper standard to assess the reliability of expert witnesses.  In addition, defendants assert that the trial court erred by denying the motions to preclude plaintiffs' expert witnesses as unreliable.  We agree that the trial court used the wrong standard to analyze defendants' motions, so we vacate its decision and remand for application of the proper standard.

## I.  FACTUAL AND PROCEDURAL HISTORY

This case arises out of health issues that plaintiff AH suffered as a result of premature birth.  Plaintiff Crystal Haynes is AH's mother.  AH was Haynes's third birth.  As with her other pregnancies, Haynes received prenatal care at the Comprehensive Women's Health Center.

During Haynes's 2011 pregnancy with AH, it was discovered that she had a shortened cervix.  When Haynes gave birth to AH at 28 weeks' gestation, AH weighed 2 pounds, 15.6 ounces and suffered from chronic respiratory and neurological issues.  Haynes, both individually and as next friend of AH, claims that AH's health issues resulted from prematurity caused by defendants' failure to meet the applicable standard of care.  Specifically, plaintiffs allege that defendants—all the doctors who participated in Haynes's prenatal care—failed to order transvaginal ultrasounds

---

[1] Plaintiffs filed an initial complaint against defendants Mercy Health Partners, Dr. Sarah Hellmann, Dr. Jennifer Mary Schlies, Dr. Michael D. Engel, Dr. David A. Cree, Dr. Danielle R. Snyder, and Dr. Austin Finkle, also known as Dr. Austin Finklea.  However, after completing some discovery, plaintiffs' counsel discovered that additional doctors were involved in plaintiffs' care.  Plaintiffs filed a second complaint against defendants Mercy Health Partners, Dr. Sara Holzgen, Dr. Gustav Barkett, Dr. Emily Zoulek, Dr. Meredith Mann, Dr. Kristen Sjostrand, Dr. Winter Dowland, and nurse Elizabeth Meacham.  The parties stipulated to the consolidation of the two cases, but with two cases formally pending in the trial court, this appeal was assigned two docket numbers under Internal Operating Procedure 7.205-2.  Dr. Schlies, Dr. Engle, and Dr. Sjostrand have since been dismissed from the case.

[2] *AH v Mercy Health Partners*, unpublished order of the Court of Appeals, entered September 14, 2023 (Docket Nos. 364939 and 364940).

despite her risk factors for preterm delivery, including a shortened cervix during her 2008 pregnancy and the dilation and curettage or "D & C" procedure she underwent in 2002 after a miscarriage. Plaintiffs further allege that defendants failed to timely diagnose Haynes's shortened cervix during the 2011 pregnancy and offer vaginal progesterone to prolong the pregnancy.

Defendants moved for summary disposition,[3] asserting that the opinions of plaintiffs' standard-of-care experts were not reliable. After the parties presented extensive briefing, documentation, and oral arguments, the trial court denied defendants' motions. This appeal followed.

## II. ANALYSIS

Defendants argue that the trial court erred in denying their motions for summary disposition. We agree that the trial court failed to consider defendants' motions under the proper standard.

The Michigan Supreme Court recently reviewed the applicable standards of review for medical malpractice disputes of this sort in *Danhoff v Fahim*, 513 Mich 427; 15 NW3d 262 (2024).

> On appeal, we review grants and denials of summary disposition de novo. The proper interpretation of statutes and the Michigan Rules of Evidence is also reviewed de novo. De novo review means that this Court independently reviews the issue without deference to the lower court.
>
> Defendants' motion for summary disposition was filed under MCR 2.116(C)(10). Such a motion tests the factual sufficiency of the claim. A trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. A motion for summary disposition may only be granted on this basis when there is no genuine issue of material fact. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ.
>
> This case also presents an evidentiary issue—whether the trial court properly concluded that plaintiff's expert's testimony was unreliable and thus, inadmissible. Evidentiary issues are reviewed for an abuse of discretion. A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. A trial court necessarily abuses its discretion when it makes an error of law. [*Id*. at 441-442 (cleaned up).]

Under MCL 600.2912a, there are special evidentiary burdens for medical malpractice plaintiffs. "A plaintiff in a medical malpractice action bears the burden of establishing (1) the applicable standard of care, (2) breach of that standard of care by the defendant, (3) injury, and

---

[3] Defendants moved for summary disposition under MCR 2.116(C)(8) (failure to state a claim) and MCR 2.116(C)(10) (no genuine issue of material fact). However, the trial court found that the complaint was sufficient and decided the motions under MCR 2.116(C)(10).

(4) proximate causation between the alleged breach and the injury." *Danhoff*, 513 Mich at 442 (cleaned up). The plaintiff must produce expert testimony to support his or her position as to the standard of care and that the standard of care was breached. *Id*. Plaintiff, as the proponent of the evidence, "bears the burden of demonstrating the relevance and admissibility of the expert's opinions." *Id*. To meet that burden, the plaintiff "must satisfy the court that the expert is qualified under MRE 702, MCL 600.2955 and MCL 600.2169." *Id*. at 442-443 (quotation marks and citation omitted).

As noted in *Danhoff*, MRE 702, MCL 600.2955, and MCL 600.2169 govern whether expert testimony is admissible in medical malpractice cases. At the time relevant to this appeal, MRE 702 provided:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.[4]

The parallel federal rule of evidence is governed by a test articulated in *Daubert v Merrell Dow Pharm, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993), and Michigan's rule "expressly incorporate[s] *Daubert*'s reliability requirements." *Danhoff*, 513 Mich at 445. The *Daubert* "test requires the trial judge to make a preliminary assessment of whether the proposed expert's testimony is scientifically valid and whether the reasoning and methodology upon which the expert bases their testimony can be applied to the facts in the case." *Id*. at 444. "This preliminary assessment is known as the trial court's gatekeeping function." *Id*.

> The specific inquiry is flexible based on the circumstances of each case but may include a determination that the expert's theory or the techniques used to generate that theory—but not the expert's conclusions—can be tested, has been subjected to peer review and publication, has a known or potential error rate, or is generally accepted among the scientific community. [*Id*.]

Ultimately, "before expert testimony may be admitted at trial, the plaintiff must prove that the expert's testimony is relevant and reliable." *Id*. "Although the *Daubert* gatekeeping function applies to all experts, the list of factors in *Daubert* is flexible and nonexhaustive: *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Id*. at 445 (cleaned up).

Appellate review of this dispute is impeded by the unusual presentation of the case in the trial court. While the two complaints in this matter are combined over 100 pages long, they are

---

[4] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See ADM File No. 2021-10, 512 Mich lxiii (2023). We rely on the version of the rules in effect at the time this matter was decided.

not organized into counts as provided in MCR 2.113(B)(3), and it does not appear that the specific phrase "medical malpractice" appears anywhere in them. That said, there is little doubt that they raise claims of medical malpractice. Perhaps reflecting the unfocused nature of the complaints, defendants' motions for summary disposition asked the trial court to dismiss "Plaintiff's Claim that Vaginal Progesterone would 'more likely than not' have prevented or delayed preterm birth," "Plaintiff's Claim that the standard of care mandated administrating of vaginal progesterone," and "Plaintiff's Claim that transvaginal ultrasounds" were called for as part of plaintiffs' care. This does not appear to be the sort of request for "dismissal of or judgment on all or part of a claim" contemplated in MCR 2.116(B)(1)—here, plaintiffs' "claim" is that defendants committed medical malpractice. In light of plaintiffs' obligation to establish the standard of care through expert testimony, it appears that defendants' motions were aimed at disqualifying plaintiffs' experts and thus getting summary disposition—an approach *Danhoff* makes clear is procedurally proper. However, in the absence of a more definite statement of plaintiffs' claims, it is unclear to us the extent to which plaintiffs' claim of medical malpractice against any given defendant stands or falls should any of those motions be granted.

Likely due to the tangled presentation of the case, the trial court appeared to mix the standard for reviewing a motion brought under MCR 2.116(C)(10)—which requires the court to consider the evidence in a light most favorable to the nonmoving party—with the trial court's "gatekeeping" responsibility to ensure that expert testimony is reliable. The trial court provided the following explanation for its decision to deny defendants' motion:

> Considering the factors provided by rule and statute, the court finds that questions of fact remain over the disputed standards of care and proximate causes when the parties' evidence (mostly in the form of academic articles) is *viewed in the light most favorable to Plaintiffs*. Although MCL 600.2955(1) requires this court to consider all seven of its factors, it does not require that each factor must favor a proffered opinion. *Chapin v A&L Parts, Inc*, 274 Mich App 122, 137; 732 NWd [sic] 578 (2007). The parties' generous submissions in support of and opposed to this motion show that the methodologies from which these opinions are drawn have been subjected to testing, replication, and peer-reviewed publications which take such things as error rates into consideration. Defendants have nevertheless tried to convince the court that the opinions are not consistent with the generally accepted standards for applying and interpreting the methodologies, and that the opinions are not generally accepted and relied on in the prenatal-healthcare community.

> But the court finds that Plaintiffs have submitted evidence showing that such acceptance does exist, regardless of what Defendants have argued are its defects and weaknesses. The courts are not in the business of resolving scientific disputes. The only proper role of the courts is to filter out expert evidence that is unreliable-not to admit only evidence that is unassailable. *Chapin*, 274 Mich App at 139. The jury must give the answers to the questions presented here as *there remains genuine issues of material fact*. [Emphasis added.]

Earlier in the trial court's opinion, it did cite the *Daubert* test, MRE 702, and some of the factors enumerated in MCL 600.2955(1). However, it failed to provide any analysis of the factors in MCL 600.2955(1) or cite any specific literature supporting its conclusion. Simply reciting that "the methodologies from which these opinions are drawn have been subjected to testing, replication, and peer-reviewed publications which take such things as error rates into consideration" provides no analysis of whether MCL 600.2955(1) is satisfied.[5] Instead, the court—understandably, given the form of the plaintiffs' complaint and defendants' motions challenging it—appears to have applied the standard for motions brought under MCR 2.116(C)(10) instead of fulfilling its gatekeeping role. Because both parties submitted scientific literature purportedly supporting their respective positions, the trial court seemingly concluded that plaintiffs' expert testimony was admissible and left credibility determinations to the jury. However, MRE 702 expressly requires the trial court to determine *whether* a proposed expert's testimony is sufficiently reliable that the expert will be *allowed* to testify; it cannot be left to the jury, because the nature of the inquiry is to decide what will be presented to the jury. If, after exercising that gatekeeping function, the trial court were to exclude a particular expert's opinion as unreliable, *then* it would be in a position to determine—viewing the remaining evidence in the light most favorable to the nonmoving party—whether there remained genuine issues of material fact. Here, our review of the trial court's reasoning for its decision to deny defendant's motions leads us to conclude that it failed to properly separate these analyses.

In light of this conclusion, the trial court's decision must be set aside. When a trial court does not perform its gatekeeping function, the proper remedy is to remand to that court "to complete the proper inquiry." *Clerc v Chippewa Co War Mem Hosp*, 477 Mich 1067 (2007).[6] Consistent with *Danhoff*, 513 Mich at 456, we "remand to the trial court to determine whether" plaintiffs' experts "opinions were reliable under MRE 702, MCL 600.2955, and MCL 600.2169."

The order of the trial court is vacated the matter is remanded for further proceedings consistent with this opinion.

/s/ Michael F. Gadola
/s/ Matthew S. Ackerman

---

[5] We therefore disagree with the dissent's assertion that "the trial court analyzed the evidence submitted by plaintiffs" in a manner that satisfies MCL 600.2955(1). While the dissent offers a detailed discussion of the expert testimony, the trial court itself did not engage in a comparable analysis. We express no view on the merits of the dissent's analysis, other than to note that we do not believe such an analysis should be undertaken in the first instance on appeal.

[6] See also *Walsh v Sakwa*, unpublished per curiam opinion of the Court of Appeals, issued June 13, 2019 (Docket No. 341131), p 7; *Smith v Fliegner*, unpublished per curiam opinion of the Court of Appeals, issued February 18, 2020 (Docket No. 343667), pp 6-7.